UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCIUS VEIGA, MICHAEL STERCHELE and ALEX PARKER ZIMMERMAN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RESPONDUS, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) Case No. 1:21-cv-02620 ) ) ) ) ) ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT RESPONDUS, INC.'S MOTION TO DISMISS CLAIMS OF PLAINTIFFS MICHAEL STERCHELE AND ALEX PARKER ZIMMERMAN**

**PRELIMINARY STATEMENT**

Plaintiffs' Class Action Complaint alleges that Defendant Respondus, Inc. violated Illinois' Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), by collecting, storing and disseminating Plaintiffs' and the Class Members'—Illinois students—immutable biometric information without the requisite prior express consent through use of Respondus' remote exam proctoring system, Respondus Monitor.

Respondus seeks dismissal of the claims of Plaintiffs Michael Sterchele and Alex Parker Zimmerman because it contends that the Terms of Use require the application of Washington law to this dispute, one concerning an Illinois law that reflects a strong Illinois policy that applies here to students in the State of Illinois. Respondus' argument fails for a number of reasons. First, Respondus has failed to establish a mutual manifestation of assent (a meeting of the minds), as required; rather, Respondus makes a conclusory argument—without any evidentiary basis whatsoever—that Plaintiffs Sterchele and Zimmerman agreed to the Terms of Use. Respondus has not carried its burden to establish a binding contract, *i.e.*, assent to the Terms of Use, that would justify applying Washington law. It is a question of fact whether Plaintiffs ever saw the Terms, let alone agreed to them.[1] Simply put, Respondus cannot circumvent its obligation to establish that basic elements of contract formation were satisfied by avoiding the issue and assuming that they were. Finally, and most substantively, the application of Washington law would violate fundamental Illinois public policy, reflected in the BIPA, of protecting its citizens from the surreptitious collection of their immutable biometric information. As Illinois has a materially

---

[1] The Terms of Use for Respondus Monitor are a nine page, heavily hyperlinked document that, over the last six months alone, have changed drastically, including the addition of an arbitration clause, the removal of the word "biometric," as well as many other changes. *See* https://web.archive.org/web/20210116171052/https://web.respondus.com/tou-monitor-student/ (last accessed July 9, 2021).

greater interest in the regulation of the collection of biometric data of its own citizens than the State of Washington, Respondus' argument that Washington law applies should be rejected.

Next, Respondus contends that "even if BIPA did apply, the documents that Plaintiffs incorporate by reference in their Complaint demonstrate that Respondus complied with BIPA." In support, Respondus makes the convoluted argument that its Terms of Use are incorporated by reference into Plaintiffs' Complaint, and that the Terms of Use incorporate by reference the Privacy Policy, which, in turn, incorporates the Privacy Center, which, in turn, incorporates the Additional Privacy Information. (Def.'s Mot. at 10-11.) There is no basis for Respondus' argument that any document, much less a document four times removed, was incorporated by reference and somehow defeats—at the pleading stage—Plaintiffs' well-pled allegations that Respondus violated BIPA when it surreptitiously collected, stored and disseminated the immutable biometric information of thousands of Illinois residents. At a minimum, there are myriad factual questions regarding, for instance, whether any of these documents were actually viewed by Plaintiffs, whether Respondus actually obtained prior informed consent, whether Respondus maintained a publicly available retention schedule and, if so, whether it actually complied with same that can only be adjudicated based on a full evidentiary record. Respondus' attempt to sweep away all of Plaintiffs' claims based on this attenuated incorporation by reference theory should be rejected.

Respondus' final argument in support of dismissal–that BIPA does not apply to the information that forms the basis of Plaintiffs' claims, namely,—photographs and information derived from photographs—misses the mark. Many federal courts have held that BIPA applies where photographs are used to acquire biometric information. *See, e.g.*, *In re Facebook Biometric Information Privacy Litig.*, 2015 WL 12766439 (N.D. Cal., Nov. 9, 2015) (finding that Facebook

"violates the plain language of the BIPA" when it "extract[s] unique biometric identifiers from the hundreds of millions of photographs uploaded to its servers each day"). Simply put, Plaintiffs have set forth well-pled allegations that Respondus violated the BIPA. This Court should deny Respondus' motion to dismiss in its entirety.

## FACTUAL BACKGROUND

On March 31, 2021, Plaintiffs Michael Sterchele and Alex Parker Zimmerman initiated this lawsuit by filing a class action complaint in the Circuit Court of Cook County, Illinois contending that Respondus violated the BIPA by using its Respondus Monitor test proctoring software during remote examinations to impermissibly capture the biometric information of thousands of students in the State of Illinois. (*See* Compl., ¶¶ 9, 10.) During these remote exams, in violation of BIPA, Respondus collected biometric information and identifiers from Plaintiffs even though Plaintiffs had not consented to having their biometric identifiers collected. (*Id.*) Moreover, Respondus failed to make the proper disclosures with respect to *both* the collection of Plaintiffs' biometric identifiers and the retention schedule that would apply to Plaintiffs' biometric data once it was collected. (*Id.*) Following removal to this Court, on June 4, 2021 Respondus filed its motion to dismiss the claims of Michael Sterchele and Alex Parker Zimmerman (only), and a motion to compel arbitration of the claims of Plaintiff Lucius Veiga (only).

## ARGUMENT

**A.     Legal Standard on a 12(b)(6) Motion.**

In deciding a motion to dismiss, plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

3

U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). As set forth below, Plaintiffs have unquestionably satisfied their burden to plead facts that, if proven, would establish that Respondus violated BIPA, and accordingly the motion to dismiss should be denied in its entirety.

**B.     Respondus' Illegal Collection of Illinois Residents' Biometric Identifiers Is Governed by Illinois Law.**

Respondus first argues that Plaintiffs' BIPA claims must be dismissed because Washington law governs any disputes between the parties. In making its argument, Respondus completely abdicates its obligation to establish the existence of a binding contract, and ignores Illinois' unambiguous public policy of protecting its residents' biometric data privacy. Respondus asks the Court to ignore the State's congressional findings, legislative intent and relevant case law in favor of applying a choice-of-law clause, which would strip Illinois residents of the biometric data privacy protections promulgated by the Illinois legislature.

**1.     Respondus has not carried its burden to establish a binding contract.**

Respondus' argument that its Terms of Use require this Court to apply Washington law to Plaintiffs' claims under the Illinois BIPA should be rejected because Respondus has not, as required, made *any* showing that a binding contract was formed. Illinois law requires "a meeting of the minds or mutual assent to the terms of the contract." *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 881 (N.D. Ill. 2020), *appeal dismissed*, No. 20-1678, 2021 WL 1649781 (7th Cir. Jan. 26, 2021) (citation omitted). In determining whether a contract has been formed, Illinois courts examine (i) "whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement" and (ii) "whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms." *See, e.g.*, *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016); *see also* and *Topstep Trader, LLC v. OneUp Trader, LLC*, No. 17 C 4412, 2018 WL 1859040, at *2 (N.D. Ill. Apr. 18, 2018)

4

("Although contracts formed by creating an account on a website are a 'newer form[ ] of contracting,' the same common law contract principles apply.").

Rather than attempt to prove that a binding contract exists, Respondus asserts that the terms of use were incorporated by reference into the Complaint and, for some reason, are therefore binding. This argument is baseless. Respondus has not carried its burden to establish the elements of a binding contract under Illinois law or whether the terms of use were presented to Plaintiffs in a clear and conspicuous fashion such that they were aware of any terms that they were ostensibly agreeing to; in short, it is a question of fact whether Plaintiffs ever saw the Terms, let alone agreed to them. *See, e.g.*, *Redbox Automated Retail, LLC*, 448 F. Supp. 3d at 882 (finding that plaintiff never assented to Redbox's Terms of Use; "[w]hile the mutual-assent requirement applies in the context of internet transactions, it is complicated by the fact that many internet users may fail to realize they are agreeing to a contract at all."); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790–91 (N.D. Ill. 2011) ("[C]larity and conspicuousness of arbitration terms are important in securing informed assent.").

Even if the Court were to consider the Terms of Use at this stage—which Plaintiffs maintain would be improper— there is still a question of fact as to whether an agreement was ever formed between the parties. Plaintiffs have alleged that they were never presented with any written disclosures, explanations, retention schedules or consent forms regarding the collection of their biometric identifiers. (*See* Complaint, ¶¶ 33-36.) The Court "must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff[s]." *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir.1993). In doing so, this Court must conclude that Plaintiffs have plausibly alleged they did not consent to the Terms of Use or any other document supposedly incorporated by reference. *See, e.g., Sullivan v. All Web Leads, Inc.*, 2017 WL 2378079, at *7

5

(N.D. Ill. 2017) ("The Court feels that the legal enforceability of All Web's consent language is an issue best left for later in the litigation when there is a fully developed factual record….[Plaintiff] unequivocally alleges [] that he lacked actual notice of [defendant's] consent language…."). If Respondus has evidence that the parties entered into an agreement which satisfies the requirements of BIPA, the appropriate time for the Court to consider such evidence would be on a motion for summary judgment after development of a full evidentiary record.

2. **Illinois Has a Fundamental Public Policy in Protecting Residents' Biometric Data**

Setting aside the fact that it has not established a binding contract in the first instance, Respondus' request for this Court to apply Washington law fails. Illinois unquestionably has the greater public policy interest in having its law applied to protect its citizens from the unauthorized collection, storage and dissemination of their immutable biometric information. To begin, this Court must apply Illinois choice-of-law principles in conducting its analysis as a federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits. *See, e.g.*, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994).[2] With respect to choice-of-law principles, Illinois has adopted the approach in the Second Restatement of Conflict of Laws, which applies the broad rule that the rights and liabilities as to a particular issue are to be governed by the jurisdiction which retains the "most significant relationship" to the occurrence and the parties. *See, e.g.*, *Morris B. Chapman & Assocs. v. Kitzman,* 193 Ill.2d 560, 568, 251, Ill. Dec. 141, 739 N.E.2d 1263 (2000); Restatement (Second) of Conflict of Laws, at VII–VIII (1971). While parties may contractually agree to apply the law of

---

[2] Notably, the *Erie* doctrine extends to choice-of-law principles; thus, a federal court exercising diversity jurisdiction must also apply the choice-of-law rules of the state in which it sits. *See, e.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Midwest Grain Prods. of Ill., Inc. v. Prod., Inc.,* 228 F.3d 784, 787 (7th Cir. 2000).

a chosen state, such agreement will *not* be enforced if the parties' choice of law: (i) would violate fundamental Illinois public policy and (ii) Illinois has a materially greater interest in the litigation than the chosen state. *See, e.g.*, *Smurfit Newsprint Corp. v. Southeast Paper Mfg. Co.*, 368 F.3d 944, 949 (7th Cir. 2004) (citation omitted).

Here, there is no question that eviscerating the biometric data privacy protections promulgated by the Illinois legislature would violate a fundamental public policy, and Illinois' interest in protecting the biometric information of its citizens is exponentially greater than that of the State of Washington. What interest does the State of Washington have at all in protecting the privacy of citizens of another state thousands of miles away? Even if there was a valid choice-of-law provision, it cannot be enforced under these circumstances. This is not a close call..

In unanimously passing BIPA, the Illinois state legislature articulated a strong public policy of protecting biometric data privacy, stating that "[t]he public welfare, security, and safety [would] be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g); *see also* 740 ILCS 14/5(d) (acknowledging that the "overwhelming majority" of the public was "weary"); 740 ILCS 14/15(e)(2) (requiring biometric data to be stored as or more securely than other information). Illinois courts regularly use similar legislative statements to confirm fundamental public policy. *See, e.g.*, *Wheeler v. Caterpillar Tractor Co.*, 485 N.E.2d 372, 374-75 (Ill. 1985) ("congressional findings ... and declaration of policy ... clearly enunciate a public policy").

Moreover, the Illinois Constitution enshrines Plaintiffs' privacy rights as fundamental and backed by the unqualified right to seek redress for any violations: "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his ... privacy ... He shall obtain justice by law, freely, completely, and promptly." Ill. Const. § 12. Other Illinois

7

statutes similarly protect the privacy of biometric data. *See, e.g.*, 5 ILCS 140/2(c)(5), 140/7(1)(b) (Illinois Freedom of Information Act "exempt[s] from inspection and copying" biometric identifiers as protected "private information."); *Healey v. Teachers Retirement System*, 200 Ill. App. 3d 240 (4th Dist. 1990) (nondisclosure of items in 5 ILCS 140/7(1)(b) "comports with the public policy and legislative intent underlying the FOIA").

Enforcing a "contractual" choice of Washington law would be directly contrary to Illinois public policy because Washington law does *not* provide any private right of action for violations of individuals' biometric privacy. While Respondus cites several cases in which Illinois courts have upheld choice-of-law provisions, they are readily distinguished as none of the cited cases involved BIPA claims and none implicated any fundamental public policy concerns like those at issue in BIPA. Respondus' cited cases largely presented situations where the courts basically chose between two states' laws offering analogous (if somewhat different) relief—**not** a situation where, as here, relief is completely absent in one forum. In fact, Illinois courts routinely **reject** choice-of-law clauses that would deprive a plaintiff of a remedy otherwise available under Illinois law. *See, e.g.*, *Maher & Assocs., Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 77 (2d Dist. 1994) (refusing to apply Texas law over Illinois law, which allowed for treble damages for failure to timely pay sales commissions); *Brown & Brown, Inc. v. Mudron*, 379 Ill. App. 3d 724, 727-28 (3d Dist. 2008) (applying Illinois law on restrictive covenants over Florida law where it was "contrary to Illinois's fundamental public policy").

Respondus rightfully concedes that, in the one case it is aware of involving a choice-of-law analysis for BIPA claims, the court determined that applying a foreign state's law **would be contrary to fundamental Illinois public policy**. In *In re Facebook Biometric Information Privacy Litigation*, the defendant sought to enforce a contractual choice-of-law provision for claims

8

brought under BIPA. *See* 185 F.Supp.3d 1155 (N.D. Cal. 2016). In rejecting Facebook's argument, the court found that the parties had entered into a valid agreement, but nonetheless refused to enforce the parties' choice of California law, finding that "[t]here can be no reasonable doubt that the Illinois [BIPA] embodies a fundamental policy of the state of Illinois," and enforcing a contractual choice of California law, which did not provide any protection for individual biometric privacy rights, would be contrary to Illinois public policy "in the starkest way possible." *Id*. at 1169.

In reaching its conclusion that Illinois law must be applied, the *Facebook* Court reasoned that the various safeguards implemented by the Illinois legislature to protect the privacy of personal biometric data "indisputably evince[] a fundamental privacy policy of Illinois." *Id*. And, while Respondus tries to gloss over the fact that the Washington statute does not contain a private right of action, this Court should not:

> It is equally undeniable that enforcing the contractual choice of California law would be contrary to this policy in the starkest way possible. Facebook tries to downplay the conflict as merely the loss of a claim. But if California law is applied, the Illinois policy of protecting its citizens' privacy interests in their biometric data, especially in the context of dealing with "major national corporations" like Facebook, would be written out of existence. That is the essence of a choice-of-law conflict.
>
> The conflict is all the more pronounced because California has no law or policy equivalent to BIPA. *Unlike Illinois, California has not legislatively recognized a right to privacy in personal biometric data and has not implemented any specific protections for that right or afforded a private cause of action to enforce violations of it.*

*Id*. at 1169–70 (internal citations omitted & emphasis added) (citing *In re DirecTV Early Cancellation Litig.*, 738 F.Supp.2d 1062, 1088 (C.D. Cal. 2010) (declining to enforce various states' choice-of-law provisions because those states lacked consumer protection statutes comparable to California's). Simply put, the Washington biometric privacy legislation does not

9

include *any* of the protections of the Illinois statute. This Court should refuse to enforce any contractual choice of law that may be in effect because applying Washington state law would undermine and violate Illinois' "indisputable" fundamental privacy policy.

### 3. Illinois Has a Materially Greater Interest Than Washington in the Litigation

Respondus' argument that Washington has a materially greater interest in the application of its law to this litigation than the State of Illinois is unpersuasive. Respondus suggests that the fact that it maintains its principal place of business in Washington somehow outweighs the interest the State of Illinois has in protecting the biometric privacy of thousands of its residents (and students). This action is brought on behalf of a class of Illinois residents whose biometric identifiers were unlawfully collected and/or stored. Respondus' conduct took place within the State of Illinois, where Respondus does business. Moreover, Plaintiffs and putative class members have no connection whatsoever to Washington.

Furthermore, even if Washington had a legitimate interest in the litigation based on Respondus' residence, the public policy concerns of Illinois (as reflected in BIPA) vastly and unquestionably outweigh any such interest:

> Illinois' greater interest in the outcome of this BIPA dispute is also readily apparent. The fundamental question on this point is "which state, in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied." ***The answer here could not be clearer. Illinois will suffer a complete negation of its biometric privacy protections for its citizens if California law is applied.*** In contrast, California law and policy will suffer little, if anything at all, if BIPA is applied. . . . And while California "certainly has a significant general interest in enforcing contracts executed...by its citizens," Illinois has "a substantial, case-specific interest in protecting its resident[s]...from losing statutory protections.

*In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d at 1170 (internal citations omitted & emphasis added). Illinois law should be applied to this case.

10

### C. Plaintiffs Do Not Allege That Respondus Complied with BIPA

#### 1. The Court may not consider Respondus' exhibits for purposes of the Motion to Dismiss.

Respondus requests this Court to consider four exhibits attached to its Motion to Dismiss. (Def.'s Mot., Exhibits A-D.) However, when additional evidence is attached to a motion to dismiss, "the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 ... or exclude the documents attached to the motion to dismiss and continue under Rule 12." *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998). There is a narrow exception to this rule: documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. *See, e.g.*, *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994).

Respondus makes the attenuated and convoluted argument that its Terms of Use are incorporated by reference into Plaintiffs' Complaint. Respondus further argues that the Terms of Use incorporate by reference the Privacy Policy, which, in turn, incorporates the Privacy Center, which, in turn, incorporates the Additional Privacy Information—hoping that this circular logic will convince the Court to consider these four documents. (Def.'s Mot. at 10-11.) The Seventh Circuit has affirmed that "'while documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are *central* to his claim,' this is a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment…" *Levenstein*, 164 F.3d at 347 (quoting *Wright*, 29 F.3d at 1248).

Plaintiffs did not attach any documents to their Complaint, nor do they incorporate by reference the Terms of Use. In fact, Plaintiffs allege that they were **never** provided with any disclosures regarding the collection of their biometric information. (Compl., ¶¶ 33-36.)

11

Respondus' attempt to bootstrap some alleged disclosure in its "Privacy Center" by saying that document is referenced in its Privacy Policy, which was not referenced or attached to the Complaint, but is nonetheless incorporated by reference in the Terms of Use is unavailing. Simply put, it is not appropriate to consider Respondus' exhibits in ruling on the motion to dismiss. Those exhibits should be considered in the context of a full and complete evidentiary record.

> 2. **Even if Plaintiffs agreed to Respondus' Terms of Use, the disclosures therein are still deficient under the plain language of BIPA.**

BIPA does not merely require that private entities develop a written policy related to retention and destruction of biometric identifiers in its possession; rather, section 15(a) creates a legally protected interest in individuals' biometric data not being retained *after the time allowed by the statute.* BIPA requires all private entities in possession of biometric identifiers or biometric information to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied **or within 3 years of the individual's last interaction with the private entity.**" 740 ILCS § 14/15(a). An unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does. Just as section 15(b) expressly conditions lawful *collection* of biometric data on informed consent, section 15(a) expressly conditions lawful *retention* of biometric data on the continuation of the initial purpose for which the data was collected. *See, e.g.*, *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154–55 (7th Cir. 2020).

Respondus' Terms of Use state that Respondus Monitor saves all recordings for a period of one year. (Def.'s Mot., Ex. A. at 4.) However, Institutions (*i.e.*, the schools and universities using the Respondus Monitor product) have the ability to retain a user's data for up to an additional four (4) years, indicating that in some (if not all) cases, Respondus retains biometric identifiers for

12

as many as five years. (*Id*.) This is seemingly confirmed by its Additional Privacy Information document, which states that the default data retention period is, in fact, five years. (*See* Def.'s Mot*.,* Ex. D at 2.) Respondus retains data for five years unless an Institution requests that it be deleted immediately. There is no legitimate purpose for retaining a user's biometric data for a year after an exam, let alone five years. Retaining biometric information in excess of the three-year timeframe established by the statute—or for any length of time beyond the purpose of its initial collection—is a clear violation of 740 ILCS § 14/15(a). Furthermore, the Terms of Use state, "Respondus does not guarantee removal of all traces of any information or data (including recordings) from the Respondus Monitor Services after deletion." This could hardly be deemed a destruction policy. Without guaranteeing the destruction of data, there is no way to ascertain whether Respondus has retained biometric data belonging to users. This failure to develop, disclose, and *comply with* data retention and destruction policies violates 740 ILCS § 14/15(a).

Plaintiffs have alleged that they did not receive any written disclosure of Respondus' collection or storage of their biometric identifiers and that they did not receive a writing explaining why their biometric identifiers would be collected. (Compl., ¶¶ 33-34.) Plaintiffs further contend that they did not receive a written retention schedule regarding how long Respondus would retain their biometric identifiers and they did not provide informed permission for the collection of their biometric identifiers. (*Id*., ¶¶ 35-36.). Plaintiffs' allegations clearly state a claim for a violation of section 15(b). *See, e.g.*, *Rosenbach v. Six Flags Enter. Corp.*, 432 Ill.Dec. 654, 129 N.E.3d at 1203-04 (holding that a "complaint alleg[ing] that defendants violated the provisions of section 15 of the Act when [they] collected [the plaintiff's] son's thumbprint without first following the statutorily prescribed protocol" stated a Section 15(b) claim).

D.     **BIPA Applies to Respondus' Use of Photographs to Collect Biometric Information.**

Defendant's claim that BIPA does not apply to the use of photographs is a fundamental misunderstanding of the statute. A photograph is not a form of biometric identifier and Plaintiffs do not argue otherwise. Biometric information under BIPA is defined as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. However, Respondus argues that *information derived from photographs* is also excluded from BIPA's reach. This is simply an incorrect statement of the law. BIPA's text and intent confirm that biometric *identifiers* derived from photographs—like those collected from Plaintiffs – are fully protected.

At least four federal courts have held that BIPA applies where photographs are used to acquire biometric information. In *In re Facebook Biometric Information Privacy Litigation*, the Court, analyzing BIPA, stated:

> Photographs are not (themselves) regulated as biometric identifiers because, if they were, Facebook (and every other entity in Illinois) would violate the BIPA simply by collecting photographs that have people in them. That would be absurd. Likewise, it would make no sense to regulate as biometric information the collection of a derivative data point like someone's height simply because that data point was derived from a photograph. But Facebook does not just collect photographs, nor does it simply collect the height of the subjects of its photographs. ***Instead, Facebook uses algorithms to extract unique biometric identifiers from the hundreds of millions of photographs uploaded to its servers each day. Facebook therefore violates the plain language of the BIPA.***

2015 WL 12766439 (N.D. Cal., Nov. 9, 2015) (internal citations omitted & emphasis added) (stating "[a] scan of face geometry derived from a photograph is no less a biometric identifier than any other scan of face geometry."). On this point, the *Facebook* court concludes, "[a]dopting Facebook's "source" rule—that biometric identifiers may never be drawn from photographs— would gut BIPA almost entirely. The legislature did not intend this, and the Court should reject Facebook's argument." *Id*. In line with *Facebook*, three additional federal courts all reached the

14

exact same conclusion. *See Rivera v. Google, Inc.* 238 F. Supp. 3d 1088, 1095 (N.D. Ill. 2017); *Monroy v. Shutterfly, Inc.*, Case No. 16-c-10984, 2017 U.S. Dist. LEXIS 149604, 2017 WL 4099846, at *3 (N.D. Ill., Sept. 15, 2017); *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1006 (N.D. Ill. 2015). In this case, Plaintiffs allege that Respondus Monitor "works by using the student's computer webcam to collect images and videos of the student." (Compl. ¶¶ 19, 21 & 30.)

Defendant also contends that the collection of biometric identifiers and biometric information is taken from *video* of Plaintiffs and Members of the Class, not photographs. The same logic applies regarding the use of photographs to collect biometric identifiers. Biometric information under BIPA is defined as "any information, <u>regardless of how it is captured, converted, stored, or shared,</u> based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10 (emphasis added). Thus, biometric identifiers collected via video would fall under the statutory definition set forth by BIPA.[3]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss in its entirety and award all such other relief as is equitable and just.

---

[3] Even if the Court were to grant Respondus' motion to dismiss—it should not—dismissal with prejudice is inappropriate here, given the nascent stage of this litigation. Where there is no adjudication on the merits, a dismissal should be granted *without* prejudice, as opposed to granting dismissal *with* prejudice. *See, e.g.*, *Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 2014 IL App (1st) 111290, ¶ 42, 10 N.E.3d 307, 321 (2014); *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir. 1983) ("[D]ismissal with prejudice is a harsh sanction which should usually be employed only in extreme situations, where there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing.")

| | |
|---|---|
| Dated: July 9, 2021 | Respectfully submitted, |
| | *s/ Matthew Lee* |
| | Matthew Lee |
| | Andrei V. Rado |
| | Blake Hunter Yagman |
| | Jonathan Cohen |
| | Erin Ruben |
| | **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC** |
| | 100 Garden City Plaza, Suite 500 |
| | Garden City, New York 11530 |
| | Tel.: (212) 594-5300 |
| | Email: byagman@milberg.com |
| | arado@milberg.com |
| | mlee@milberg.com |
| | jcohen@milberg.com |
| | eruben@milberg.com |
| | |
| | Gary M. Klinger |
| | **MASON LIETZ & KLINGER LLP** |
| | 227 W. Monroe Street, Suite 2100 |
| | Chicago, IL 60606 |
| | Phone: (202) 429-2290 |
| | Fax: (202) 429-2294 |
| | gklinger@masonllp.com |