**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LUCIUS VEIGA, MICHAEL STERCHELE and ALEX PARKER ZIMMERMAN, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Case No. 1:21-cv-02620 |
| v. | ) ) | |
| RESPONDUS, INC., | ) ) | |
| Defendant. | ) | |

**PLAINTIFF VEIGA'S MEMORANDUM OF LAW IN SUPPORT OF**
**OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**
**INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

## <u>TABLE OF CONTENTS</u>

Table Of Authorities ............................................................................................................... iii

Introduction ............................................................................................................................ 1

Factual Background ............................................................................................................... 1

The Illinois Biometric Information Privacy Act ................................................................... 1

Respondus Monitor ............................................................................................................... 2

Startup Sequence ................................................................................................................... 2

Pre-Amendment Respondus Monitor Terms of Use for Students .......................................... 3

Amended Respondus Monitor Terms of Use for Students ...................................................... 3

Plaintiff Veiga's User Experience ......................................................................................... 8

Legal Standard ...................................................................................................................... 9

Argument ............................................................................................................................. 10

I.      Respondus Has Not Shown the Existence of a Valid Agreement to Arbitrate or Waive
        Class Action ............................................................................................................. 10

        A. Four-Part Inquiry For Assessing The Validity And Enforceability Of Electronic
           Contracts Of Adhesion ....................................................................................... 12

        B. The Respondus Monitor's startup screen failed to adequately communicate that
           Defendant was introducing contractual terms Impacting Plaintiff's rights. ......... 14

           1. The website's design and content did not give Plaintiff clear and
              conspicuous notice of new terms ................................................................... 14

        C. Veiga Did Not Receive Reasonable Notice of The Agreement ............................ 16

           1. Respondus has not evidenced that Plaintiff was aware that he was binding
              himself to more than an offer of services ....................................................... 16

           2. Plaintiff "Agreed" Simply To Take An Exam ................................................ 18

II.     Even if Plaintiff had notice of the modifications in the 2021 User Terms, They do not
        operate retroactively .................................................................................................. 19

III. The Arbitration and Class-Waiver Provisions in the 2021 Terms of Use Are Unenforceable Because They Are Both Procedurally and Substantively Unconscionable. .......................................................................................................... 20

    A. The Modifications are Procedurally Unconscionable .................................................. 21

    B. The Arbitration Agreement Is Substantively Unconscionable .................................... 23

Conclusion ....................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Anand v. Heath*,
19-CV-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019)......................................10

*AT & T Techs., Inc. v. Comm'cns Workers of Am.*,
475 U.S. 643 (1986)........................................................................................9

Badie v. Bank of Am.,
79 Cal. Rptr. 2d 273 (Cal. App. 1st Dist. 1998) ...........................................19

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) .........................................11, 12, 13, 14

*Campbell v. Gen. Dynamics Govt. Sys. Corp.*,
407 F.3d 546 (1st Cir. 2005).........................................................................17

*Cf. Fteja v. Facebook, Inc.*,
841 F.Supp.2d 829 (S.D.N.Y. 2012)..............................................................6

*Cobb v. Ironwood Country Club*,
183 Cal. Rptr. 3d 282 (Cal. App. 4th Dist. 2015) ........................................20

*CouponCabin, Inc. v. PriceTrace, LLC*,
No. 18 C 7525, 2019 WL 1572448 (N.D. Ill. Apr. 11, 2019).......................10

Cullinane v. Uber Techs., Inc.,
893 F.3d 53 (1st Cir. 2018)...........................................................................14

*Dayan v. McDonald's Corp.*,
466 N.E.2d 958 (Ill. App. 1st Dist. 1984).....................................................19

*Doctor's Assoc., Inc. v. Casarotto*,
517 U.S. 681 (1996)......................................................................................20

*First Fin. Ins. Co. v. Purolator Sec., Inc.*,
388 N.E.2d 17 (Ill. App. 1st Dist. 1979).......................................................20

*Foster Enterprises, Inc., v. Germania Federal Savings & Loan Assoc.*,
97 Ill.App.3d 22 (1981) ................................................................................19

*Gupta v. Morgan Stanley Smith Barney, LLC*,
934 F.3d 705 (7th Cir. 2019) ..........................................................................9

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) .............................................................23

*Int'l Bhd. of Elec. Workers Local 2150 v. NextEra Energy Point Beach, LLC*,
    762 F.3d 592 (7th Cir. 2014) ...............................................................9

*Keefe v. Allied Home Mortg. Corp.*,
    332 Ill. Dec. 124, 912 N.E.2d 310 (App. Ct. 5th Dist. 2009) ...........................21

*Kinkel v. Cingular Wireless LLC*,
    857 N.E.2d 250 (Ill. 2006).................................................................20, 21, 23

*Larned v. First Chicago Corp.*,
    636 N.E.2d 1004, 264 Ill. App. 3d 697, 201 Ill. Dec. 572 (1994) ....................21

*Martinell v. Navistar Int'l Corp.*,
    No. 11 C 8707, 2012 WL 2503964 (N.D. Ill. June 28, 2012) .........................21

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995).........................................................................14

*Maxwell v. Fidelity Financial Services, Inc.*,
    184 Ariz. 82 (1995).......................................................................23

*McKee v. Audible, Inc.*,
    CV 17–1941–GW, 2017 WL 4685039 (C.D. Cal. July 17, 2017)....................15

*Metter v. Uber Technologies, Inc.*,
    No. 16-cv-06652-RS, 2017 WL 1374579 (N.D. Cal. Apr. 17, 2017)................15

National Production Workers Union Insurance Trust v. Cigna Corp.,
    665 F.3d 897 (7th Cir. 2011) ...............................................................10

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ...........................................................13, 15

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)...............................................................10, 11, 15

*Norcia v. Samsung Telecomm. Am., LLC*,
    845 F.3d 1279 (9th Cir. 2017). ...........................................................18

*Phoenix Ins. Co. v. Rosen*,

Pl.'s Mem. in Opp'n to Mot. Compel   iv

      949 N.E.2d 6397 (Ill. 2011) ..............................................................................21

*Razor v. Hyundai Motor America,*
      222 Ill.2d 75 (2006) .......................................................................................20

*Specht v. Netscape Communications Corp.,*
306 F.3d 17 (2d Cir. 2002) .....................................................................15, 16, 17

*Sgouros v. TransUnion Corp.,*
      817 F.3d 1029 (7th Cir. 2016) ...........................................................11, 13, 16

*Stone v. Doerge,*
      328 F.3d 343 (7th Cir. 2003) ...........................................................................9

*Streams Sports Club, Ltd. v. Richmond,*
      457 N.E.2d 1226 (1983)..................................................................................20

*Sullivan v. All Web Leads, Inc.,*
      2017 WL 2378079 (N.D. Ill., 2017) ...........................................................14, 15

*Tinder v. Pinkerton Security,*
      305 F.3d 728 (7th Cir. 2002) .......................................................................9, 10

*William Charles Constr. Co. v. Teamsters Local Union 627,*
      827 F.3d 672 (7th Cir. 2016) ...........................................................................9

*Williams v. Walker-Thomas Furniture Co.,*
      350 F.2d 445 (D.C. Cir. 1965).........................................................................20

*Wilson v. Redbox Automated Retail, LLC,*
      448 F. Supp. 3d 873 (N.D. Ill. 2020) .............................................................15

**Other**

*Restatement (Second) of Cont*racts § 205 (1981).........................................................19

*1 Williston on Contracts* § 4:16 (4th ed.).....................................................................10

## INTRODUCTION

Lucius Veiga, Michael Sterchele, and Alex Parker Zimmerman (collectively, "Plaintiffs") filed this class action on behalf of themselves and all similarly situated individuals to seek redress for Respondus' ("Defendant") violations of the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA" or the "Act"), including collecting, storing, and using Plaintiffs and class members' biometric identifiers and biometric information (collectively, "biometrics") without informed written consent.

Before the Court is Defendant's motion to stay and compel individual arbitration against Plaintiff Veiga—an attempt to extinguish his class action claims and deny him his day in court. This Court should deny Defendant's motion to compel arbitration because Defendant has failed to meet its fundamental burden of proving the existence of a valid agreement to arbitrate. However, even if the court finds that there was an agreement between the parties to arbitrate, Defendant's motion should still be denied because the purported agreement is procedurally and substantively unconscionable. At minimum, the Court should decline to rule on the motion until Plaintiff Veiga has had the opportunity to conduct narrowly-tailored, arbitration-related discovery.

## FACTUAL BACKGROUND

### *The Illinois Biometric Information Privacy Act*

Illinois enacted BIPA to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." The Act forbids the unauthorized collection and storing of biometric data. Under the Act, a private entity cannot gather and use an individual's "biometric identifiers"—defined as retinal or iris scans, fingerprints, voiceprints, or hand or face geometry scans—prior to obtaining their consent. *Id*. § 14/10. The Act also bans the non-consensual collection and storage of biometric information "based on" those biometric identifiers. *Id.*

Pl.'s Mem. in Opp'n to Mot. Compel

### Respondus Monitor

Respondus develops and licenses testing and assessment software for the education, training, and certification markets.[1] Defendant offers various products, including Respondus Monitor, a fully-automated proctoring solution that uses a student's webcam to record student activity, both audibly and visually, during tests and examinations.

Defendant's most widely-used application is LockDown Browser. When students use LockDown Browser during an examination, "they are unable to print, copy, go to other websites, access other applications, or close a test until it is submitted for grading."[2] Institutions with campus-wide licenses of LockDown Browser can also license Respondus Monitor, "a webcam *feature for* LockDown Browser that records students during online, non-proctored exams." *Id*. Respondus Monitor "*adds* webcam technology to LockDown Browser" and "is *a companion product* to LockDown Browser."[3]

Defendant describes Respondus Monitor as a cloud-based service and software that works "to provide an online interactive database of video/audio recordings and associated data featuring student activity captured during student assessment sessions for use in monitoring students."[4] "When this feature is enabled for a test, students are required to use a webcam and microphone with LockDown Browser."[5] Importantly, from a student's perspective, Respondus Monitor is nothing more than "free" software that he/she is required to use in order to take an exam.

### Startup Sequence

If an instructor has enabled Respondus Monitor for an assessment session, students "are then guided through a pre-exam sequence . . . ."[6] First, "the student must . . . select the exam from

---

[1] https://web.respondus.com/about/ (last visited July 6, 2021).

[2] **Exhibit 2**, Instructor Quick Start Guide (Blackboard Edition) (emphasis added), available at chrome-extension://gphandlahdpffmccakmbngmbjnjiiahp/https://www.respondus.com/downloads/RLDB-QuickStartGuide-Instructor-Instructure.pdf (last visited July 6, 2021).

[3] https://web.respondus.com/he/monitor/ (last visited July 6, 2021).

[4] Respondus Monitor - Institution License and Terms of Use https://web.respondus.com/tou-monitor-admin/ (last visited July 6, 2021).

[5] Instructor Quick Start Guide, *supra* note 2 (emphasis added) (last visited July 6, 2021).

[6] https://web.respondus.com/he/monitor/ (last visited July 6, 2021).

within the student's university's learning management system and indicate that they are ready to begin the exam." Def.'s Br. in Supp. of Mot. to Stay and Compel Arbitration, ECF No. 13 at 1-2. This click launches the LockDown Browser, and students are presented with a screen (the "startup screen") containing a standard-form software license in a scroll-down text box—the Respondus Monitor Student Terms of Use. Def.'s Brief in Support of Motion to Stay and Compel Arbitration, ECF 13 at 1-2. Before students can access their assessments or exams, they are forced to click an "Agree" or "Disagree" button. *Id.* Failure to click on the "Agree" button bars students from accessing and taking their exams. *Id.* According to the declaration of Defendant's Chief Executive Officer, David Smetters, the process described thus far "has been in effect from before January 17, 2021, through the present." Smetter's Dec., ECF No. 13-1 at ¶ 7.

### *Pre-Amendment Respondus Monitor Terms of Use for Students*

The Respondus Monitor Student Terms of Use in effect until January 17, 2021 (hereinafter, the "2020 Terms of Use"),[7] granted Plaintiff Veiga a "limited, non-exclusive, non-transferable, non-assignable license" to use Respondus Monitor.[8] The 2020 Terms of Use *did not* include an arbitration and class waiver provision. Significantly, the 2020 Terms of Use also *do not* disclose that Respondus Monitor uses facial recognition technology to collect, capture, analyze, and disseminate a student's biometric identifiers or biometric information. Compl. ¶ 22. The 2020 Terms of Use also contained an express complete-integration clause stating that "[t]hese Terms constitute the entire agreement between the parties with respect to the subject contained herein and supersede any other agreements between Respondus and you regarding Respondus Monitor."[9]

### *Amended Respondus Monitor Terms of Use for Students*

Without prior notification to its users, Respondus surreptitiously posted a modified version of the 2020 Terms of Use on the startup screen which added an arbitration clause. According to

---

[7] A true and correct copy of the Monitor Student Terms in effect prior to January 21, 2021 is attached hereto as **Exhibit 1** and was previously publicly available on Respondus' website.
https://web.archive.org/web/20210116171052/https://web.respondus.com/tou-monitor-student/ (last visited July 8, 2021).

[8] *Id.*

[9] *Id.*

Smetters' Declaration, "[o]n January 17, 2021, the Student Terms of Use applicable to all persons at all institutions nationwide that use Respondus Monitor were *amended* to, among other things, add an individual arbitration agreement." Smetter's Dec., ECF No. 13-1 at ¶ 8 (emphasis added). Before students were able to access and take their exams, Defendant allegedly presented users with the following scroll-down text box:[10]



Nothing in the record indicates in what ways, if any, the new screen differed from the old one to put users on notice that they were potentially agreeing to new terms. Apparently, Respondus displayed the same screen that users were accustomed to before the amendments and merely changed the "Last Updated" date. The only information immediately and conspicuously displayed inside the text box is the phrase "Respondus Monitor Student Terms of Use" appearing at the top of the box and the "Last Updated" date. Two fully visible paragraphs of text follow this, and a third paragraph is cut off at the end of the third line. Including the cut-off line, the immediately visible text states the following:

> **Last Updated**: January 21, 2021
>
> These Terms of Use ("Terms"), which incorporate the Respondus Help Center Terms of Use ("Help Center Terms") included at the end of these Terms, are an agreement between you and Respondus, Inc. ("Respondus"), and between you and

---

[10] Smetter's Dec., ECF No. 13-1 at ¶ 8.

your learning institution, or your school (your "Institution"), regarding your use of Respondus Monitor®. By using Respondus Monitor, you agree to these Terms in full and that you are age 14 or older, or age 16 or older in the EEA, and if under the age of 18 and located in the United States of America, such Terms have been agreed to by your parent or guardian.

Respondus Monitor is a cloud-based service ("Respondus Monitor Services") and software ("Respondus Monitor Software") (also collectively referred to in these Terms as "Respondus Monitor"), that work together to provide an online interactive database of video, audio, and other data captured during student testing or assessment sessions for your Institution's use in monitoring student participation in such sessions. The purpose of such monitoring is for your Institution to be confident that the identified individuals/students are those permitted to participate in the testing or assessment sessions, and to deter inappropriate behavior that might impact the integrity of the assessment process.

The Respondus Help Center includes software functions as a part of the Respondus Monitor Services ("Help Services") provided by Respondus that enable users of LockDown Browser (another software [cuts off].

ECF No. 13 at 2; Smetters Dec., ECF No. 13-1 at 2. The first paragraph states that the 2021 Terms of Use are an agreement between the student-user and Respondus regarding the student's use of Respondus Monitor. The second paragraph provides background information on Respondus Monitor. The third paragraph provides user-help information.

Immediately below this portion of the 2021 Terms of Use, Respondus placed "Agree" and "Disagree" buttons. The buttons are not accompanied by any text communicating the significance of clicking on either button. Moreover, the layout and language of the scroll-down text box do not alert users that, by clicking "Agree," they acknowledge reading and understanding the Terms of Use or assent to contractual terms affecting their rights. In this regard, Respondus' scroll-down text box is similar to the one rejected by the Seventh Circuit in *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016):



*Cf. Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 835, 840 (S.D.N.Y. 2012) (finding Facebook user was "informed of the consequences of his assenting click" because he was shown, *immediately below* the "Sign Up" button, a notice stating, "By *clicking* Sign Up, you are indicating that you have read and agree to the Terms and Service" (emphasis added)).

For the Court's convenience, below are some examples of methods of notice and electronic presentations of standard forms that clearly notify users of what clicking a given button signifies:[11]



Notably, Defendant did not call users' attention to the arbitration and class waiver provisions and chose not to prompt users to examine the text of the terms. Respondus could have easily done this by, for example, sending users an e-mail notification about the material modifications made to the Terms of Use, or through conspicuous placement of the notice, in terms of placement, size, or color, to draw attention to the fact that the 2020 Terms of Use now included arbitration and class waiver provisions, as follows:[12]

---

[11] Available at https://www.termsfeed.com/blog/browsewrap-clickwrap/ (last visited July 9, 2021).

[12] Available at https://www.termsfeed.com/blog/browsewrap-clickwrap/ (last visited July 9, 2021).



Additionally, Defendant could have used a scroll-wrap mechanism that forces users to scroll through the full text of the Terms of Use before they can assent by clicking on an "Agree" button. This is not to say that this Court should prescribe a rule requiring a specific method of notice and assent. However, the available layout and design options at Defendant's disposal to ensure an effective notice—contrasted with the barebones approach taken—undermine Defendant's intention to place users on inquiry notice of the amended Terms of Use.

Significantly then, the only way post-amendment users of Respondus Monitor could see that Defendant sought to modify the agreement by way of including arbitration and class-waiver provisions was by navigating to the right side of the scroll-down text box and using the scroll bar to make the text visible. If a user scrolled down the page, he or she would have seen the following message:

> NOTE: THESE TERMS CONTAIN AN ARBITRATION AND CLASS ACTION WAIVER PROVISION IN THE "ARBITRATION" SECTION BELOW THAT AFFECTS YOUR RIGHTS UNDER THESE TERMS AND WITH RESPECT TO ANY DISPUTE BETWEEN YOU AND RESPONDUS OR OUR AFFILIATES.

ECF No. 13-4 at 1. Undoubtedly, the easiest method to ensure users were conspicuously notified about this material alteration to the Terms of Use was to make this disclosure from the beginning, which is done by many online terms of use agreements across a multitude of product markets, so that it was visible from the startup page without the need to scroll down.

Lastly, the amended Student Terms of Use were buried at the bottom of the website, requiring users to ferret out provisions that they had no reason to know or suspect had been added. So, in addition to the stress and anxiety present at the start of a college exam, students who chose to scroll through the Student Terms of Use on or after January 17, 2021, to determine what terms had been updated, were presented with arbitration-related legalese buried in pages 8-10 of the printable version of the Student Terms of Use. Respondus thus forced students to perform a split-second legal analysis of how their rights would be affected without a meaningful opportunity to review the Terms or consult an attorney before beginning their exams or tests. Defendant's design choices were strategic, opportunistic, made in bad faith, and surprised any users in Plaintiff's circumstances. Significantly, neither Respondus or the student-users' schools provided them any alternative means of accessing or taking their exams or tests, leaving them no choice but to proceed with using Respondus.

### *Plaintiff Veiga's User Experience*

Plaintiff Veiga, a chemistry major at Northwestern University and citizen of Illinois, enrolled in university courses that required the use of Defendant's LockDown Browser and companion Respondus Monitor application to take remote online exams in 2020 and 2021. Compl. ¶ 8. Neither Respondus or Northwestern University provided Plaintiff Veiga any alternative means of accessing or taking his remote online exams. As a result, he had no choice but to use Defendant's LockDown Browser and Respondus Monitor in order to access and take his exams.

During these exams, in violation of BIPA, Defendant collected biometric information and identifiers from Plaintiff without his consent. *Id.* Defendant failed to make the proper disclosures regarding the collection of said biometric identifiers, and Respondus also failed to disclose the retention schedule that would apply to the collection of Plaintiff's biometric data. *Id.*

On March 31, 2021, Plaintiff Veiga, along with Plaintiffs Michael Sterchele and Alex Parker Zimmerman, filed the present class action on behalf of themselves and all other similarly situated individuals for damages and other legal and equitable remedies resulting from Defendant's illegal actions in collecting, storing, and using Plaintiffs' and class members' biometric identifiers and biometric information (collectively, "biometrics") without informed written consent, in direct violation of the BIPA. Respondus has moved to compel Plaintiff Veiga to individual arbitration under the amended terms of the 2021 Terms of Use.

## LEGAL STANDARD

A court's task on a motion to compel arbitration is to "*implement the parties' preferences* between judicial and arbitral forums, not to displace that choice with one of [its] own." *Stone v. Doerge*, 328 F.3d 343, 346 (7th Cir. 2003) (emphasis added). Although favored by federal policy, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *William Charles Constr. Co. v. Teamsters Local Union 627*, 827 F.3d 672, 679 (7th Cir. 2016) (quoting *AT & T Techs., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 648 (1986)). *See also Int'l Bhd. of Elec. Workers Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014) (holding that a party seeking arbitration must present a claim that is, "on its face," governed by an arbitration clause). Thus, consent is a foundational principle of the Federal Arbitration Act. Federal courts apply state-law principles of contract formation when determining whether a valid agreement to arbitrate exists, and whether a party's claims fall within the scope of that agreement. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705 (7th Cir. 2019).

In order to compel arbitration, a movant must show: (1) the existence of a valid written arbitration agreement; (2) that the dispute in question falls within the scope of that agreement; and (3) that the plaintiff refused to arbitrate. Courts review motions to compel arbitration under a summary-judgment-like standard. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). Thus, the reviewing court must view the facts in the light most favorable to the non-moving party, accept the non-movant's evidence, and draw all reasonable inferences in favor of the party opposing arbitration. *Id.* If the non-movant demonstrates a genuine issue of material fact concerning the existence of an agreement to arbitrate, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. *See Tinder*, 305 F.3d at 735.

## ARGUMENT

### I. Respondus Has Not Shown the Existence of a Valid Agreement to Arbitrate

Under Illinois law, an enforceable contract requires an offer, acceptance, consideration, and mutual assent. *National Production Workers Union Insurance Trust v. Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011). It is axiomatic that an offeree cannot assent, through conduct or otherwise, to an offer unless the offeree knows of its existence. 1 *Williston on Contracts* § 4:16 (4th ed.). Accordingly, "[a]ssent to contractual terms requires knowledge of those terms; '[a] party cannot assent to terms of which it has no [actual] or constructive' knowledge." *Anand v. Heath*, 19-CV-00016, 2019 WL 2716213, at *3 (N.D. Ill. June 28, 2019). Given the voluntary nature of arbitration, "[t]his principle of knowing consent applies with particular force to provisions for arbitration. Clarity and conspicuousness of arbitration terms are important in securing informed assent." *Id.* at *3. Therefore, without knowledge of the existence of the agreement's terms and conditions, Plaintiff Veiga could not have assented to the arbitration and class waiver provisions.

In the context of online and web-based agreements, "[a] party has constructive knowledge of a contractual term if she is on inquiry notice of the term and assents to it through the conduct

that a reasonable person would understand to constitute assent. Inquiry notice is actual notice of circumstances sufficient to put a prudent man upon inquiry." *Id.* at *3. *See also CouponCabin, Inc. v. PriceTrace, LLC*, No. 18 C 7525, 2019 WL 1572448, at *4 (N.D. Ill. Apr. 11, 2019) ("Courts enforce [certain kinds of Internet] agreements only when there is actual or constructive knowledge of terms."); *Nicosia v. Amazon.com, Inc.*, No. 14-cv-4513, 2019 WL 2482674, at *8 (E.D.N.Y. June 14, 2019) ("A website user is deemed to be on inquiry notice of contract terms *so long as the 'design and content' of the webpage renders 'existence' of those terms 'reasonably conspicuous.'*") (emphasis added).

In *Sgouros*, where the party opposing arbitration was presented with a scroll-down text box similar to Respondus Monitor's, the Seventh Circuit held that, when undertaking a constructive-knowledge analysis of online agreements, courts should inquire whether "[1] the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and [2] whether the circumstances support the assumption that the [user] receives reasonable notice of those terms." *Sgouros*, 817 F.3d at 1034. Recognizing that virtually all comprehensive empirical studies to date conclude that the average internet user does not notice or read online standard contract terms,[13] the *Sgouros* court reasoned that neither browsewraps nor clickwraps are, in and of themselves, sufficient to support an assumption of reasonable notice just because some terms are displayed on a screen:

> This is a fact-intensive inquiry: [and] we cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other *content that requires further action* (scrolling, following a link, etc.) Indeed, a person using the Internet may not realize that she is agreeing to a contract *at all*, whereas a reasonable person signing a physical contract will rarely be unaware of that fact.

*Sgouros*, 817 F.3d at 1034-35 (emphasis added). The court further observed that "[n]o court has suggested that the presence of a *scrollable window* containing buried terms and conditions of purchase or use is, in itself, sufficient for the creation of a binding contract, and we have no reason to think that Illinois would be the first." *Sgouros*, 817 F.3d at 1036 (emphasis added).

---

[13] *See, e.g., Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 377-81 (E.D.N.Y. 2015) (collecting studies)(**Exhibit 3**).

Here, Defendant seeks to compel Plaintiff Veiga to individual arbitration on two grounds. First, Respondus argues that Plaintiff Veiga had notice of the material modifications Defendant made to the 2020 Terms of Use because, in May 2021, Plaintiff Veiga was presented with the amended version of the Student Terms of Use before taking an exam. ECF No. 13, at 1-2, 7. Second, Defendant argues that Plaintiff Veiga's response to Defendant's invitation to continue to take his exam was sufficient to unambiguously manifest assent to the modifications. *Id.* at 7-8.

Defendant's efforts to communicate the amended Terms of Use to Plaintiff Veiga were grossly inadequate and failed to put a reasonable user in Plaintiff's shoes on inquiry notice. Further, Plaintiff's "affirmative act" served only one purpose: allowing him to take his required exam. Accordingly, the Court should deny Defendant's motion.

### A. Four-Part Inquiry for Assessing the Validity and Enforceability of Electronic Contracts of Adhesion

In *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015), users of in-flight wireless internet services brought putative class action against Gogo LLC, an in-flight wireless internet service provider, alleging violations of various consumer protection statutes. Like the instant case, the central question in *Berkson* was whether Gogo LLC gave plaintiffs adequate notice of its terms of use containing a mandatory arbitration provision. After a detailed analysis of the issues before it, including sociological research and legal and economic empirical studies, the court denied the defendant's motion to dismiss and concluded that the online terms were an unenforceable contract of adhesion.

The *Berkson* court explained that:

Analyzing established common law contract formation doctrine, alongside the general contract principles and cases regarding inquiry notice and the validity and enforceability of internet agreements, the following four-part inquiry in analyzing sign-in-wraps, and electronic contracts of adhesion generally, is required:

(1) Aside from clicking the equivalent of sign-in (e.g., log-in, buy-now, purchase, etc.), is there substantial evidence from the website that the user was aware that she was binding herself to more than an offer of services or goods in exchange for money? If not, the "terms of use," such as those dealing with venue and arbitration, should not be enforced against the purchaser.

(2) Did the design and content of the website, including the homepage, make the "terms of use" (i.e., the contract details) readily and obviously available to the user? If not, the "terms of use," such as those dealing with venue and arbitration, should not be enforced against the purchaser.

(3) Was the importance of the details of the contract obscured or minimized by the physical manifestation of assent expected of a consumer seeking to purchase or subscribe to a service or product? If yes, then the "terms of use," such as those dealing with venue and arbitration, should not be enforced against the purchaser.

(4) Did the merchant clearly draw the consumer's attention to material terms that would alter what a reasonable consumer would understand to be her default rights when initiating an online consumer transaction from the consumer's state of residence: The right to (a) not have a payment source charged without notice (i.e., automatic payment renewal); (b) bring a civil consumer protection action under the law of her state of residence and in the courts in her state of residence; and (c) participate in a class or collective action? If not, then (a), (b), or (c) should not be enforced against the consumer.

*Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 402 (E.D.N.Y. 2015).

At the center of this framework is the *Berkson* court's agreement with the basic principles of web-based contract formation: First, a rejection of unsubstantiated assumptions about consumer assent in electronic contracts. *Sgouros*, 817 F.3d at 1034-35; *Berkson,* 97 F. Supp. 3d at 402–03 ("until useful consumer studies demonstrate that average consumers using the computer understand what contract terms are being accepted when a purchase is made, preemptive rules in favor of vendors who do not forcefully draw purchasers' attention to terms disadvantageous to them should be rejected. The burden of showing agreement to details of a contract on a website's contract of adhesion is on the vendors. It is the vendor who designs the website and puts into it terms favoring itself.") Second, the reasonable requirement that sophisticated merchants like Respondus bear "the onus" of making design, layout, and content choices that "put users on notice of the terms to which they wish to bind consumers." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). *See Sgouros*, 817 F.3d 1033–34 (stating that there is nothing inherently offensive about electronically delivered standard contract terms "*as long as* the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." (emphasis added)); *Berkson*, 97 F. Supp. 3d at 382-83 ("The offeror has thought

through the problems with the aid of lawyers and other experts and is a 'repeat player.' . . . The consumer is usually a transient user, a 'myopic' 'one-shotter' experiencing 'behavioral lock-in.'")

Applying this framework, Defendant has not met its burden.

### B. Respondus Monitor's startup screen failed to adequately communicate that Defendant was introducing contractual terms impacting Plaintiff's rights.

#### 1. The website's design and content did not give Plaintiff clear and conspicuous notice of new terms.

Under the Uniform Commercial Code, a term is conspicuous if it is "so written, displayed, or presented that a reasonable person against which it is to operate *ought to* have noticed it." § 1-201. General Definitions., UCC § 1-201 (emphasis added). By analogy, a term on a website's screen is conspicuous if it is displayed in such a way that a reasonable user against whom it is to operate *ought to* notice it. *See generally Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61–62 (1st Cir. 2018) (applying Massachusetts law) ("[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility."). Although Defendant argues that Plaintiff received reasonable notice because the terms were presented in a clickwrap-like agreement, a party's characterization of the terms as a browsewrap, clickwrap or a hybrid, says little about an offeree's notice of the terms. *Berkson*, 97 F. Supp. 3d at 382-83.

Here, Defendant's design and content decisions ensured that Plaintiff *did not* see the unilateral material modifications to the Terms of Use. Defendant had reason to believe that Plaintiff Veiga and others similarly situated would not assent to the amended Terms of Use if they knew they would be giving up substantive rights. *See generally Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) ("As a practical matter, it seems unlikely that petitioners ... had any idea that by signing a standard-form agreement to arbitrate disputes they might be giving up an important substantive right. In the face of such doubt, we are unwilling to impute this intent to petitioners."). As discussed above, Defendant did not explicitly reference the amendments in the immediately visible portion of the startup screen and, instead, chose a mechanism that forced users to scroll down in the text box to see the legally significant amendment of the Terms of Use.

State and federal courts have repeatedly emphasized that there is no reason for courts and sophisticated merchants like Defendants to assume that consumers "will scroll down to subsequent screens simply because screens are there." *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 32 (2d Cir. 2002); *see also Sullivan v. All Web Leads, Inc.*, 2017 WL 2378079, at *1 (N.D. Ill., 2017) (finding unenforceable a clickwrap agreement that required users to scroll down).

Further obscuring the significance of the amended Terms of Use, Defendant buried the arbitration and class-waiver provisions on pages 8-10 of the printable version of the 2021 Terms of Use. If a user wanted to see the arbitration and class waiver provisions or the full text of the Terms, he or she was required to navigate to the right side of the screen and use the scroll bar. Exhibit 1, at ¶ 4. Courts have been unwilling to enforce online agreements where the location and appearance of an electronically delivered disclosure prevent reasonable consumers from being on constructive notice. *See, e.g., Specht*, 306 F.3d at 22–23 (refusing to enforce terms of use that "would have become visible to plaintiffs only if they had scrolled down to the next screen"); *Nguyen*, 763 F.3d at 1173 (refusing to enforce terms of the agreement, "[w]here the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it . . .") *Sullivan*, 2017 WL 2378079, at *8 ("the Court cannot, while drawing inferences in Sullivan's favor, find that All Web's alleged consent mechanism gave Sullivan reasonable notice sufficient for an enforceable written "agreement"); *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 887 (N.D. Ill. 2020), appeal dismissed, No. 20-1678, 2021 WL 1649781 (7th Cir. Jan. 26, 2021) ("In sum, the Court finds that Wilson never assented to Redbox's Terms of Use because neither the My Bag screen on Redbox's kiosks nor the Sign In screen on Redbox's website provided clear and conspicuous notice of those terms. Moreover, Wilson's mere receipt of an email from Redbox did not give rise to an agreement to arbitrate. Consequently, Wilson is not bound by Redbox's Terms of Use and its mandatory arbitration provision. Redbox's motion to compel arbitration and stay proceedings (Dkt. No. 12) is accordingly denied."); *McKee v. Audible, Inc.*, CV 17–1941–GW, 2017 WL 4685039 (C.D. Cal. July 17, 2017) (denying motion to compel where disclosure was only visible if user scrolled

beyond "Start Now" button but was not required to do so); *Metter v. Uber Technologies, Inc.*, No. 16-cv-06652-RS, 2017 WL 1374579 (N.D. Cal. Apr. 17, 2017) (same). Given the readily available and inexpensive layout and design choices at Defendant's disposal, one can hardly fathom how Defendant's minimal efforts could place a reasonable prudent offeree in Plaintiff Veiga's shoes on inquiry notice. At the very least, reasonable minds could disagree on the reasonableness of notice. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 238 (2d Cir. 2016) (holding that Amazon failed to show that consumer was on notice and agreed to mandatory arbitration as a matter of law.)

### C. Veiga Did Not Receive Reasonable Notice of The Agreement

#### 1. Respondus has not evidenced that Plaintiff Veiga was aware that he was binding himself to more than an offer of services.

In *Sgouros,* the Seventh Circuit recognized that the context in which a person assents to online or web-based offers matters because "a person using the Internet may not realize that she is agreeing to a contract *at all*, whereas a reasonable person signing a physical contract will rarely be unaware of that fact." *Sgouros*, 817 F.3d at 1034-35 (emphasis added). When examining the reasonableness of the notice provided by agreement delivered in electronic form then, courts will consider whether the presentation of the standard terms conform to established market norms and the consumer expectations that such norms create.

Defendant argues that the Court may presume Plaintiff Veiga had reasonable notice and unambiguously assented to the modifications because he was presented with the amended version of the Student Terms of Use and clicked the "Agree" button before proceeding to take his exam. This position ignores the academic setting in which Defendant's new offer was made, the dual purpose of Plaintiff Veiga's click, and the parties' prior history.

Defendant presented the amended Terms of Use while Plaintiff Veiga was under the pressure of taking an exam. Plaintiff did not have sufficient time to complete a meaningful review of the amended Terms before indicating assent. Moreover, Plaintiff Veiga was simply taking his exams via the application that his school instructed him to use. Neither Respondus nor Northwestern University provided any alternative means for Plaintiff Veiga to access and take his

course exams. Terminating the transaction would have meant not taking his exams. These circumstances are sufficient to dilute the effectiveness of whatever reasonably notice Defendant sought to provide.

In *Specht v. Netscape Communications Corp.*, the Second Circuit indicated that "[w]hen products are 'free' and users are invited to download them in the absence of reasonably conspicuous notice that they are about to bind themselves to contract terms, the transactional circumstances cannot be fully analogized to those in the paper world of arm's-length bargaining." *Specht*, 306 F.3d at 32. Thus, without a reasonably conspicuous notice, the agreement at issue in *Specht* did not amount to an unambiguous manifestation of assent to be bound by the arbitration agreement at issue. Here, Plaintiff Veiga did not download or install any Respondus software in 2021. He simply accessed his school's LMS and chose the relevant exams. After indicating that he was ready to begin his exams, the LockDown Browser he had downloaded in 2020 launched. The "Agree" button was not accompanied by any clear text expressing what a click on either button will signify. The fact that Plaintiff Veiga had already downloaded the application and that previous set of terms governed its relationship with Defendant (which did *not* contain an arbitration or class waiver provision), undermines the notion that Plaintiff's bare act of accessing his school's learning management system and responding to Defendant's prompt to continue to his exams, unambiguously manifests assent to the arbitration provision contained in the amended Terms of Use.

Prior dealings and the nature of the Respondus application further undermine the notion that Plaintiff Veiga ever knowingly intended to make a binding choice between judicial and arbitral forums. Defendant has failed to establish that by merely accessing a startup screen from within a school's LMS, students were on notice from the Respondus Monitor feature of "contractually binding terms or for effectuating waivers of [students'] legal rights." *Campbell v. Gen. Dynamics Govt. Sys. Corp.*, 407 F.3d 546, 557 (1st Cir. 2005) (holding that an "e-mail communication, in and of itself, was not enough to put a reasonable employee on inquiry notice of an alteration to the contractual aspects of the employment relationship."). As the First Circuit observed in an

analogous case, "[g]iven that circumstance, we cannot say that delivery of an e-mail heralding the birth of a new policy would raise a red flag vivid enough to cause a reasonable [student] to anticipate the imposition of a legally significant alteration to the terms and conditions of his [exam taking]." *Id.*

### 2. Plaintiff Veiga Only "Agreed" to Take His Exams

Plaintiff Veiga's conduct cannot be construed as an unambiguous assent to Defendant's terms. The "Agree" button displayed on the Respondus startup screen performs a function entirely unrelated to the function by which a user manifests assent to the Terms of Use: it simply allows the user to proceed to take an exam. This underlying function invests the act with ambiguity and diverts the user's attention from the content of the Terms of Use.

Additionally, the "Agree" and "Disagree" buttons were not accompanied by any clear text expressing what clicking either button would signify. The immediately visible screen only displayed that the agreement concerned Plaintiff Veiga's use of the software. In the context of digital licenses, "'contractual use term' means an enforceable term that defines or limits the use, disclosure of, or access to licensed information or informational rights, including a term that defines the scope of a license."[14] Accordingly, Plaintiff Veiga had no reason to know or expect that contractual significance would be assigned or associated with using a plug-in to the school-required browser for taking exams. As the Ninth Circuit recognized in *Norcia v. Samsung Telecomm. Am., LLC*, "regardless of apparent manifestation of his consent, [an offeree] is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." 845 F.3d 1279, 1285 (9th Cir. 2017).

Based on the limited record available, Defendant has not met its burden to show, and the Court should not assume, that Defendant clearly and effectively communicated the amended terms of the 2021 Terms of Use to Plaintiff Veiga. Additionally, the cases cited by Defendant offer little

---

[14] Uniform Computer Information Transactions Act, § 102(19).

guidance because they involve retail consumers voluntarily seeking products in a mass/public marketplace presented with terms for the first time and contemporaneously with their purchase.

## II. Even If Plaintiff Veiga Had Notice of the Amendments to the 2021 Terms of Use, They Do Not Operate Retroactively.

Plaintiff Veiga's statutory claims accrued in 2020 and Defendant's Student Terms of Use *did not include an arbitration agreement or class waiver prior to January 17, 2021.*[15] Defendant amended the 2020 Terms of Use by introducing arbitration and class waiver provisions. However, even if Defendant reserved the right to unilaterally modify the terms and conditions of the agreement, "[t]here cannot be any doubt that a covenant of fair dealing and good faith is implied into every contract . . . ." *Foster Enterprises, Inc., v. Germania Federal Savings & Loan Assoc.*, 97 Ill.App.3d 22, 28 (1981). *See also Restatement (Second) of Contracts* § 205 (1981). The doctrine of good faith performance "imposes a limitation on the exercise of discretion vested in one of the parties to a contract." *Dayan v. McDonald's Corp.*, 466 N.E.2d 958, 972 (Ill. App. 1st Dist. 1984). Accordingly, "a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Dayan*, 466 N.E.2d at 972. "Where a party acts with improper motive . . . that party is exercising contractual discretion in a manner inconsistent with the reasonable expectations of the parties and therefore is acting in bad faith." *Id.* "Where contractual discretion is exercised in bad faith, . . . it is incumbent on the courts to grant appropriate relief . . . ." *Foster*, 97 Ill.App.3d at 30.

Here, as detailed above, Defendant made strategic and opportunistic design choices concerning the presentation and delivery of standard-form terms that concealed the true nature of the amendments to the 2020 Terms of Use. But Defendant's unilateral right to modify the contract does not give it "carte blanche to make any kind of change whatsoever . . . ." *Badie v. Bank of Am.*, 79 Cal. Rptr. 2d 273, 281 (Cal. App. 1st Dist. 1998). The grossly inadequate notice provided to

---

[15] Further, the proposed class definition here is limited to people who used Respondus Monitor services between 2016 and 2020.

students taking remote online exams during a global pandemic was inconsistent with users' reasonable expectations and surprised any users in Plaintiff Veiga's circumstances.

Defendant's choices were motivated by a desire to extricate itself from certain liability. No reasonable observer would conclude that, in the circumstances described above, users in Plaintiff Veiga's shoes would knowingly and voluntarily give up significant substantive rights and give the arbitration and class-waiver provisions retroactive effect to impair their accrued rights so that a savvy and sophisticated software developer could continue surreptitiously collecting their biometric data and profiting from it. "[T]he covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights." *Cobb v. Ironwood Country Club*, 183 Cal. Rptr. 3d 282, 284 (Cal. App. 4th Dist. 2015). Indeed, Defendant fails to explain how Plaintiff could agree to retroactively agree to arbitrate a claim that occurred several months earlier. The Court, therefore, should not enforce the arbitration and class waiver provisions at issue here.

### III. The Arbitration and Class-Waiver Provisions in the 2021 Terms of Use Are Unenforceable Because They Are Procedurally and Substantively Unconscionable.

Even assuming the parties agreed to arbitrate Plaintiff Veiga's BIPA claims (which they did not), the arbitration and class waiver provisions are nonetheless unenforceable because they are unconscionable. Arbitration is a matter of contract. Like other contracts, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . . ." *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996). The Court should apply Illinois' general contract law to determine whether the arbitration clause at issue is unconscionable.

Under Illinois law, a finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006) (citing *Razor v. Hyundai Motor America*, 222 Ill.2d 75, 99 (2006)). "The term unconscionability encompasses an 'absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *First Fin. Ins. Co. v. Purolator Sec., Inc.*, 388 N.E.2d 17, 22 (Ill. App. 1st Dist. 1979) (citing

*Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)). In *Streams Sports Club, Ltd. v. Richmond*, the Illinois Supreme Court held that a contract is unconscionable "when it is improvident, oppressive, or totally one-sided." 457 N.E.2d 1226 (1983).

### A. The Amendments to the Terms of Use Are Procedurally Unconscionable

Procedural unconscionability "consists of some impropriety during the process of forming the contract depriving a party of meaningful choice." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011) (citing *Kinkel,* 223 Ill.2d at 23). To determine procedural unconscionability, courts consider all of the circumstances surrounding the formation of the contract, including "whether each party had the opportunity to understand the terms of the contract [and] whether important terms were 'hidden in a maze of fine print.'" *Id.* The analysis also considers the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability. *Keefe v. Allied Home Mortg. Corp.*, 332 Ill. Dec. 124, 912 N.E.2d 310 (App. Ct. 5th Dist. 2009). When these factors are applied to the instant case, it is evident that the arbitration and class-waiver agreement in the amended Students Terms of Use are procedurally unconscionable.

First, the agreement at issue here is an adhesive one. It was printed on a standardized form and offered on a take-it-or-leave-it basis by a software developer whose bargaining power significantly outweighed that of Plaintiff Veiga. *See Martinell v. Navistar Int'l Corp.*, No. 11 C 8707, 2012 WL 2503964, at *3, (N.D. Ill. June 28, 2012) (citing *Larned v. First Chicago Corp.*, 636 N.E.2d 1004, 1006, 264 Ill. App. 3d 697, 201 Ill. Dec. 572 (1994)) ("A contract of adhesion is a contract submitted by one party to another on a take-it-or-leave-it basis, without any opportunity to negotiate its terms.").

Second, the setting of the transaction unreasonably favored Defendant. Plaintiff Veiga had no option but to use Respondus Monitor if he wanted to access and take his exams. Neither Respondus nor Northwestern University provided Plaintiff Veiga any alternative means of accessing or taking his remote online exams. Nor did Plaintiff have the opportunity to negotiate the arbitration and class-waiver provisions, or take his business elsewhere. Indeed, Respondus admits that it forces students like Plaintiff Veiga to accept the Terms of Use if they want to take

their exams: "It is not possible to use Respondus Monitor to take an exam without viewing the screen and affirmatively selecting the 'Agree' button. If a student selects the 'Disagree' button, the student is not able to proceed past the screen and is not able to use Respondus Monitor to take the exam." Smetter's Dec., ECF No. 13-1 at ¶ 5. Respondus also amended the Opt-Out provision to further emphasize that opting out of the Terms of Use would adversely affect student-users:

| Pre-amended Terms of Use | Amended Terms of Use |
|---|---|
| If you cease to agree with these Terms, or the privacy and security policy below at some point in the future, you may opt-out by contacting your Institution. However, opting-out may affect how you will need to complete your course, and your Institution makes no representations regarding how it will affect your relevant course. As such, we encourage you to speak with your instructor before opting out. | If you cease to agree with these Terms, or the privacy and security policy below at some point in the future, you may opt-out by contacting your Institution. However, opting-out may affect how you will need to complete your course, and your Institution makes no representations regarding how it will affect your relevant course *or any ramifications from opt-out (e.g., you may not be able to complete the requirements of such course).* As such, we encourage you to speak with your instructor before opting out. [emphasis added] |

Plaintiff Veiga was required to agree to the Terms of Use on the spot–with little-to-no time to review it–or be denied the ability to take his course exams, which would mean losing credit for the courses. The pressure on Plaintiff Veiga to agree to the arbitration and class-waiver provisions mere moments before taking his course exams was immense. When Plaintiff Veiga clicked on the "Agree" button, his course grades depended upon taking and completing exams administered via Respondus Monitor.

Third, Plaintiff Veiga is a chemistry major—not an attorney. Nor did he have an opportunity to engage or consult an attorney during Respondus Monitor's startup process before clicking the "Agree" button. Without a legal background, Plaintiff Veiga did not have the

wherewithal to personally interpret, analyze, or evaluate dense, complicated contractual provisions drafted by Defendant's attorneys moments before taking his course exams.

Lastly, there was an overwhelming disparity in bargaining power, which could not be more disproportionate. Plaintiff Veiga is a natural person and student with *no* bargaining power. On the other hand, Defendant is a sizable, savvy, and sophisticated technology company with many resources. In sum, all factors indicate that the arbitration and class-waiver provisions are procedurally unconscionable.

### B. The Arbitration Agreement Is Substantively Unconscionable

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to *oppress or unfairly surprise* an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Kinkel*, 857 N.E.2d at 267 (emphasis added) (quoting *Maxwell v. Fidelity Financial Services, Inc.*, 184 Ariz. 82, 89 (1995).

First, there is a high degree of substantively unconscionable because Defendant carved out from the arbitration and class-waiver provisions those cases it would likely initiate, which unreasonably favors Defendant. "Respondus may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents)." ECF No. 13-5 at 8-9. In truth, then, the clause only requires Plaintiff Veiga to arbitrate, while Defendant retains the right to pursue legal action in court against Plaintiff and class members. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1173-74 (9th Cir. 2003) ("By essentially only covering claims that employees would likely bring against Circuit City, this arbitration agreement's coverage would be substantively one-sided[.]").

Additionally, the arbitration and class-waiver provision's primary purpose and effect are to unreasonably immunize Defendant's liability for pre-amendment wrongful conduct while limiting Plaintiff Veiga's legal remedies. Defendant cannot retroactively insulate itself from liability and it cites no case law that says otherwise. Moreover, the provision also limits Plaintiff

Veiga's ability to pursue and seek reasonable redress for violations of Plaintiff's rights under BIPA. The disputes between parties typically involve small amounts of damages.

Because the arbitration and class-waiver provision unreasonably favors Respondus, it is substantively unconscionable. As shown above, the provision at issue is both substantively and procedurally unconscionable, thereby making it unenforceable. Consequently, there is no valid agreement to arbitrate, and the Court should deny Defendant's motion to compel arbitration.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion to Compel Individual Arbitration must be denied.

Dated: July 9, 2021

*s/ Matthew Lee*
Matthew Lee
Andrei V. Rado
Blake Hunter Yagman
Jonathan Cohen
Erin Ruben
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel.:    (212) 594-5300
Email:  byagman@milberg.com
        arado@milberg.com
        mlee@milberg.com
        jcohen@milberg.com
        eruben@milberg.com

Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (202) 429-2290
Fax: (202) 429-2294
gklinger@masonllp.com