**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUCIUS VEIGA, MICHAEL STERCHELE, and ALEX PARKER ZIMMERMAN, on behalf of themselves, and all others similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 1:21-cv-02620 |
| v. | ) ) | |
| RESPONDUS, INC., | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STAY AND COMPEL
<u>INDIVIDUAL ARBITRATION OF PLAINITFF LUCIUS VEIGA'S CLAIMS</u>**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...............................................................................................1

II.     ARGUMENT .....................................................................................................1

        A.      The Evidence Respondus Submitted Stands Unrebutted........................1

        B.      Plaintiff Had Reasonable Notice of the Student Terms of Use and Objectively
                Manifested His Assent. ..........................................................................2

        C.      The Scope of the Arbitration Agreement Covers Plaintiff's BIPA Claims. ..........10

        D.      The Student Terms of Use Is Not Procedurally or Substantively
                Unconscionable.....................................................................................13

III.    CONCLUSION..................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anand v. Heath*,
　No. 19-CV-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019) ............................................3

*Applebaum v. Lyft, Inc.*,
　263 F. Supp. 3d 454 (S.D. N.Y. 2017) ...................................................................................4

*AT&T Mobility LLC v. Concepcion*,
　563 U.S. 333 (2011) .......................................................................................................14, 16

*In re Baldwin–United Corp.*,
　770 F.2d 328 (2d Cir.1985) ..................................................................................................13

*Berkson v. Gogo LLC*,
　97 F. Supp. 3d 359 (E.D.N.Y. 2015) .....................................................................................5

*Campbell v. Gen. Dynamics Govt. Sys. Corp.*,
　407 F.3d 546 (1st Cir. 2005) ..................................................................................................7

*Cargolux Airlines Intern., S.A. v. Sea-Tac Air Cargo L.P. ex rel. Transiplex
(Seattle) Inc.*,
　2012 WL 2688782 (Wash. Ct. App. 2012) ...........................................................................11

*Cobb v. Ironwood Country Club*,
　233 Cal. App. 4th 960 (2015) ...............................................................................................12

*DeJohn v. The .TV Corp. Int'l*,
　245 F. Supp. 2d 913 (N.D. Ill. 2003) .....................................................................................8

*Emp. Painters' Tr. v. J & B Finishes*,
　77 F.3d 1188 (9th Cir. 1996) .................................................................................................8

*Forrest v. Verizon Communications, Inc.*,
　805 A.2d 1007 (D.C. 2002) ....................................................................................................4

*Gore v. Alltel Communications, LLC*,
　666 F.3d 1027 (7th Cir. 2012) .............................................................................................10

*Gorny v. Wayfair*,
　No. 18 C 8259, 2019 WL 2409595 (N.D. Ill. June 7, 2019) ..................................................3

*Hancock v. American Tel. and Tel. Co., Inc.*,
　701 F.3d 1248 (10th Cir. 2012) .............................................................................................4

*Harbers v. Eddie Bauer, LLC*,
  No. C19-1012JLR, 2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) ....................................3

*Henderson v. U.S. Patent Commission, Ltd.*,
  No. 15 C 3897, 2015 WL 6791396 (N.D. Ill. Nov. 2, 2015)....................................................13

*Hill v. Gateway 2000, Inc.*,
  105 F.3d 1147 (7th Cir. 1997) ...........................................................................................3, 8

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) ............................................................................................16

*Ironbeam, Inc. v. Evert*,
  417 F. Supp. 3d 1031 (N.D. Ill. 2019)................................................................................15

*Janiga v. Questar Capital Corp.*,
  615 F.3d 735 (7th Cir. 2010) ...............................................................................................8

*Johnson v. Uber Techs., Inc.*,
  2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) .......................................................................8

*Kinkel v. Cingular Wireless, LLC*,
  857 N.E.2d 250 (Ill. 2006)..................................................................................................14

*Lee v. Ticketmaster L.L.C.*,
  817 F. App'x 393 (9th Cir. 2020).................................................................................4, 10, 12

*Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*,
  800 F.3d 343 (7th Cir. 2015) ................................................................................................2

*Magid Glove & Mfg. Safety Co., LLC v. Tower Int'l, Inc.*,
  No. 10 C 7377, 2011 WL 1118883 (N.D. Ill. Mar. 25, 2011) ..............................................14

*Martinell v. Navistar Intern. Corp.*,
  No. 11 C 8707, 2012 WL 2503964 (N.D. Ill. 2012)............................................................13

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995)..............................................................................................................12

*McKee v. Audible, Inc.*,
  CV 17–1941–GW, 2017 WL 4685039 (C.D. Cal. July 17, 2017)...........................................8

*Metter v. Uber Technologies, Inc.*,
  No. 16-cv-06652-RS, 2017 WL 1374579 (N.D. Cal. Apr. 17, 2017)......................................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985).............................................................................................................12

*Norcia v. Samsung Telecom. Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017) ...................................................................................7

*Rana v. College Admissions Assistance, LLC*,
   No. 11 C 4280, 2012 WL 1245674 (N.D. Ill. Apr. 13, 2012)......................................2

*Romney v. Franciscan Med. Grp.*,
   186 Wash. App. 728 (2015)..................................................................................15, 16

*Schwinder v. Austin Bank of Chi.*,
   809 N.E.2d 180 (Ill. App. Ct. 2004) ........................................................................12

*Sgouros v. TransUnion Corp.*,
   817 F.3d 1029 (7th Cir. 2016) ...........................................................................3, 5, 6

*Snap-on Business Solutions Inc. v. O'Neil & Associates, Inc.*,
   708 F. Supp. 2d 669 (N.D. Ohio 2010).......................................................................5

*Solo Labs., Inc. v. DRM Holdings, LLC*,
   No. 17 C 00137, 2020 WL 405639 (N.D. Ill. Jan. 24, 2020) ......................................1

*Sound of Music Co. v. 3M Co.*,
   477 F.3d 910 (7th Cir. 2007) .....................................................................................2

*Specht v. Netscape Communications Corp.*,
   306 F.3d 17 (2d Cir. 2002)..........................................................................................7

*Sullivan v. All Web Leads, Inc.*,
   2017 WL 2378079 (N.D. Ill., 2017) ...........................................................................7

*Thomas v. Guardsmark, Inc.*,
   381 F.3d 701 (7th Cir. 2004) .....................................................................................2

*Tinder v. Pinkerton Sec.*,
   305 F.3d 728 (7th Cir. 2002) .....................................................................................1

*Torgerson v. One Lincoln Tower, LLC*,
   166 Wash. 2d 510 (2009).........................................................................................15

*Tortoriello v. Gerald Nissan of North Aurora, Inc.*,
   882 N.E.2d 157 (Ill. App. Ct. 2008) ........................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..................................................................................................13

*Walters v. A.A.A. Waterproofing, Inc.*,
   120 Wash. App. 354 (2004), *review granted, cause remanded*, 153 Wash. 2d
   1023, 108 P.3d 1227 (2005)......................................................................................16

iv

*Wilson v. Playtika, Ltd.*,
    349 F. Supp. 3d 1028 (W.D. Wash. 2018) ............................................................................4

*Wilson v. Redbox Automated Retail*,
    LLC, 448 F. Supp. 3d 873 (N.D. Ill. 2020) ........................................................................8

*Zuniga v. Major League Baseball*,
    No. 1-20-1264, 2021 WL 976958 (Ill. App. Ct. Mar. 16, 2021) ...........................................14

**Statutes**

9 U.S.C. § 3 ..........................................................................................................................1

9 U.S.C. § 4 ..........................................................................................................................1

28 U.S.C. § 2072(b) ............................................................................................................13

Federal Arbitration Act .......................................................................................................16

Illinois Biometric Information Privacy Act ........................................................... *passim*

**Rules**

Fed. R. Civ. P. 23(d) ...........................................................................................................13

Fed. R. Civ. P. 56(e) .............................................................................................................1

Rule 23 ................................................................................................................................13

## I.     INTRODUCTION

Plaintiff Lucius Veiga ("Plaintiff" or "Plaintiff Veiga") agreed to arbitrate his claims against defendant Respondus, Inc. under the Illinois Biometric Information Privacy Act ("BIPA") arising from his use of the Respondus Monitor exam proctoring software. Plaintiff's attempt to get out of the contractual terms he agreed to by arguing that the contract is not enforceable and that the terms are unconscionable is not supported by the law or the facts. Respondus gave Plaintiff reasonable notice of the Respondus Monitor - Student Terms of Use ("Student Terms of Use"), and Plaintiff objectively manifested assent to those terms.  Moreover, controlling Supreme Court law holds that class waivers in arbitration agreements are enforceable and not unconscionable. Therefore, this Court should stay Plaintiff's claims pursuant to 9 U.S.C. § 3 and compel individual arbitration of these claims pursuant to 9 U.S.C. § 4.

## II.     ARGUMENT

### A.     The Evidence Respondus Submitted Stands Unrebutted.

As Respondus pointed out in its opening brief (Doc. 13 at 6), and as Plaintiff admits in his opposition (Doc. 27 at 10), the Seventh Circuit holds that a party seeking to avoid arbitration must satisfy a standard akin "to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure." *Tinder v. Pinkerton Sec*., 305 F.3d 728, 735 (7th Cir. 2002).  Under this standard, "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*  Furthermore, factual assertions "not supported by affidavit or other relevant evidence…therefore are disregarded." *Solo Labs., Inc. v. DRM Holdings, LLC*, No. 17 C 00137, 2020 WL 405639, at *1 (N.D. Ill. Jan. 24, 2020).

Significantly, although Plaintiff's brief includes a nearly nine-page section of purported "facts," Plaintiff did not submit any admissible *evidence* to support her factual assertions.  (*See*

*generally* Doc. 27 at 1-9.) Instead, aside from the portions of her "fact" section that cite Respondus' own declaration[1] and documents, Plaintiff's "fact" section relies exclusively on occasional citations to allegations in the Complaint[2] or—more frequently—naked assertions made only in Plaintiff's brief which Plaintiff does not even attempt to substantiate with a declaration or other form of admissible evidence that may be considered under a summary judgment standard. Thus, the unsupported factual assertions Plaintiff makes in his brief must be ignored, and the evidence Respondus submitted with its opening brief stands unrebutted.

**B.    Plaintiff Had Reasonable Notice of the Student Terms of Use and Objectively Manifested His Assent.[3]**

Plaintiff admits that the relevant standard in determining whether a party consented to an online or web-based agreement is an objective one—namely whether the website provides "notice

---

[1] Plaintiff also mischaracterizes Respondus' declaration in her statement of facts. For example, she asserts that the declaration discusses the "LockDown Browser" product (Doc. 27 at 3), but the declaration actually discusses Respondus Monitor (Doc. 13 at Ex. 1 ¶¶ 3-7).

[2] The Complaint is attached as Exhibit 1 to the Notice of Removal. (Doc. 1 at PageID# 9-20.)

[3] Plaintiff argues that Illinois law applies to the question of whether he entered into a valid contract with Respondus. (Doc. 27 at 10, 20.) Case law in the Seventh Circuit is split as to whether the law specified in a contract's choice-of-law provision should govern the question of contract formation. *Compare Sound of Music Co. v. 3M Co.*, 477 F.3d 910, 915 (7th Cir. 2007) (suggesting that contract formation is a question under Minnesota law when contract contains a Minnesota choice of law clause); *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004) (suggesting Tennessee choice of law may apply to question of contract validity as the court saw "nothing in Illinois's choice-of-law rules that would preclude recognizing the selection of Tennessee law on the question of validity of the contract. (No one is disputing that the Agreement exists, or that both parties signed it).")"; *Rana v. College Admissions Assistance, LLC*, No. 11 C 4280, 2012 WL 1245674, at *2 (N.D. Ill. Apr. 13, 2012) (applying Texas choice of law to determine contract validity, noting that neither party asserts there is any significant difference between Illinois and Texas law and that "Illinois courts have also suggested that a contract's choice of law clause governs the question of whether the parties formed a valid contract."); *with Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015) ("A contract's choice-of-law provision may not apply if the contract's legality is fairly in doubt, for example, if the contract is unconscionable, or if there is some other issue as to the validity of the very formation of the contract."). Here, the Terms of Use contain a Washington choice-of-law clause, and Respondus is located in Washington. However, because Washington and Illinois law do not differ materially with respect to the specific contract formation issues addressed in this brief (whether a user received reasonable notice and demonstrated acceptance of online contract terms, and whether a

of circumstances sufficient to put a prudent man upon inquiry," and the party "assents to it through

the conduct that a reasonable person would understand to constitute assent." (Doc. 27 at 10-11

(quoting *Anand v. Heath*, No. 19-CV-00016, 2019 WL 2716213, at *3 (N.D. Ill. June 28, 2019).)

Indeed, case law in both Washington and Illinois holds that a valid contract is formed where a

website provides reasonable notice of contract terms and the plaintiff takes action that a reasonable

person would understand to be manifesting assent to those terms by clicking on a button. *See, e.g.*,

*Weimin Chen*, 2019 WL 3564659, at *2-3 (holding user had constructive notice of terms where

language near "Place my Order" button "explicitly states that the user agrees to the 'Terms' by

placing the purchase order," and the word "Terms" included a hyperlink to full text of the terms);

*Harbers v. Eddie Bauer, LLC*, No. C19-1012JLR, 2019 WL 6130822, at *6–7 (W.D. Wash. Nov.

19, 2019) (holding user was bound to terms where she clicked "Submit Order" button located

above disclosure stating "By ordering you agree to eddiebauer.com's Privacy Policy and Terms of

Use," and disclosure included hyperlink to terms); *Gorny v. Wayfair*, No. 18 C 8259, 2019 WL

2409595, at *5 (N.D. Ill. June 7, 2019) (explaining that relevant inquiry is "whether the web pages

presented to the consumer adequately communicate all the terms and conditions of the agreement,

and whether the circumstances support the assumption that the purchaser receives reasonable

notice of those terms") (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir.

2016))). Because the standard is an objective one, the court need not find that Plaintiff *actually*

read the contract. *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract

---

contract is procedurally or substantively unconscionable), application of either state's law to these
specific issues does not change the analysis. Respondus consequently addresses both Illinois and
Washington law in this brief. Washington and Illinois law do differ with respect to other issues
relevant to the parties—such as Respondus' argument in its pending motion to dismiss that the
Washington choice-of-law clause precludes Plaintiff from bringing BIPA claims—and Respondus
addresses the relevant choice-of-law analysis with respect to that particular issue in its motion to
dismiss briefing.

need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome.").

Under this objective standard, Respondus' prominent presentation of the Terms of Use in black font against a plain white screen, and Plaintiff's action in affirmatively clicking the "Agree" button instead of the "Disagree" button located immediately below the Terms of Use, constitutes a clear offer and acceptance which creates a binding contract. *See, e.g.*, *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1037 (W.D. Wash. 2018) (enforcing agreement based on "forced confrontation with the terms and the forced decision to accept or reject them by clicking a button"); *see Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) (defining a clickwrap agreement as an agreement "in which website users are required to click on an 'I agree' box after being presented with a list of the terms and conditions of use); *Hancock v. American Tel. and Tel. Co., Inc*., 701 F.3d 1248, 1257 (10th Cir. 2012) (finding assent where the customer had opportunity to review the terms in a scrolling text box and had to click an "I Agree" button to manifest assent to continue with the registration process); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454 (S.D. N.Y. 2017) (finding reasonable notice where consumer clicked an "I Accept" button following a scroll box of Terms of Service which set out on the screen that "these terms of service constitute a legal binding agreement."); *Forrest v. Verizon Communications, Inc*., 805 A.2d 1007 (D.C. 2002) (observing that most consumers presumably read the agreement in a scroll box on their computer monitors where only a small portion of the document is visible at any one time).

Even agreements that are less clear and conspicuous than the Student Terms of Use have been upheld by the courts. *See, e.g.*, *Lee*, 817 F. App'x at 394 (finding user validly assented to terms of use, including an arbitration provision, where the terms of use were only contained in a hyperlink and the user clicked the "Sign In" button when signing into his account, where the

phrase, "By continuing past this page, you agree to our Terms of Use," was contained three lines *below* the sign in button); *Snap-on Business Solutions Inc. v. O'Neil & Associates, Inc*., 708 F. Supp. 2d 669, 682-3 (N.D. Ohio 2010) (finding assent where "[b]elow the 'Enter' button, the page stated 'The use of and access to the information on this site is subject to the terms and conditions . . .'" and below the text was a box with an arrow that users may click to view the entire agreement). With no other text or links presented on the page other than the Student Terms of Use and an "Agree" or "Disagree" button, it is unquestionable that a reasonable person would have received notice of the Student Terms of Use and understood that clicking "Agree" manifested assent to those terms.

The cases that Plaintiff cites in support of his argument that he did not assent to the Student Terms of Use are entirely inapposite. Plaintiff argues that the four-part inquiry that the Eastern District of New York established in *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015) is applicable to determining whether the Student Terms of Use provided reasonable notice of the contractual terms. (Doc. 27 at 12-13.) However, the framework set forth in this non-binding, out-of-Circuit case has never been adopted in this Circuit and is not consistent with either Illinois or Washington law as articulated by the Illinois and Washington cases cited throughout this brief (and Plaintiff's brief)—which simply requires that parties receive reasonable notice of contract terms. Regardless, the manner that Respondus displayed the Student Terms of Use—on a screen with virtually no other text, no other graphics—would satisfy even the *Berkson* court's test.

Plaintiff also cites to *Sgouros v. TransUnion Corp*., 817 F.3d 1029, 1034 (7th Cir. 2016) for the proposition that a scrollable window containing buried terms and conditions is not sufficient to create a binding contract. (Doc. 27 at 5-6.) In *Sgouros*, however, the court found plaintiff was not on notice of the terms of use contained in the scroll box for two main, distinguishable reasons:

1) the visible text of the scroll box, without scrolling any further than the default screen, said nothing about what the agreement regulated or that the customer was subject to any terms and 2) the block of text below the scroll box told the user that clicking on the "I Accept & Continue" button constituted his authorization for TransUnion to obtain his personal information, but "said nothing about contractual terms" that plaintiff would be agreeing to. *Sgouros*, 817 F.3d at 1034. Therefore, the court held a reasonable person would not think they were assenting to the service agreement, but rather just to the release of personal information. *Id.*

Unlike *Sgouros*, Respondus' default screen containing the Student Terms of Use was prominently entitled *twice* as "Terms of Use"; once in the upper left-hand corner and again in the middle in bold, underlined, capital letters: "**RESPONDUS MONITOR STUDENT TERMS OF USE.**" (Doc. 13 at Ex. 1 ¶ 4.) Further, the very first sentence displayed in the scroll box states: "These Terms of Use . . . are an agreement between you and Respondus, Inc. [] and between you and your learning institution, or your school [] regarding your use of Respondus Monitor. By using Respondus Monitor, you agree to these Terms in full. . . ." (Doc. 13 at Ex. 1 ¶ 4.) There was no extraneous text advising users that clicking the "Agree" button meant anything other than agreeing to the Student Terms of Use. (*Id.*) To the contrary, the "Agree" and "Disagree" buttons appeared immediately below the Student Terms of Use. (*Id.*) Therefore, even if Plaintiff chose not to scroll any further than the default lines, Plaintiff was on notice that these were terms of use that he must agree to, in full, to use the software.

Indeed, the Seventh Circuit in *Sgouros* endorsed the *exact type of scroll box and agreement that Respondus uses*: "A website might be able to bind users to a service agreement by placing the agreement, or a scroll box containing the agreement, or a clearly labeled hyperlink to the agreement, next to an "I Accept" button that unambiguously pertains to that agreement." *Sgouros,*

6

817 F.3d at 1034. That is precisely what Respondus did. When presented with the scroll box containing the Student Terms of Use and "Agree" or "Disagree" buttons, a reasonably prudent person would be on notice that they are accepting the terms above the box. Plaintiff consequently cannot argue that he had neither actual nor constructive knowledge of the Student Terms of Use.

Plaintiff asserts that the "Student Terms of Use were buried at the bottom of the website, requiring users to ferret out provisions that they had no reason to know or suspect had been added." (Doc. 27 at 8.) That is patently false. As explained above, Respondus submitted unrebutted evidence that the Student Terms of Use were prominently displayed on the screen immediately above the "Accept" and "Reject" buttons, with virtually no other text or graphics appearing on the page. (Doc. 13 at Ex. 1 ¶ 4.) The first sentence also explicitly advised users that "These Terms of Use . . . are an agreement between you and Respondus, Inc…. By using Respondus Monitor, you agree to these Terms in full…." (*Id.*) This easily distinguishes the Student Terms of Use from every case that Plaintiff cites in attempting to argue that the terms were "buried." (Doc. 27 at 15-16.) *See Norcia v. Samsung Telecom. Am., LLC*, 845 F.3d 1279, 1289-90 (9th Cir. 2017) (applying California law in holding that enclosing brochure entitled "Product Safety and Warranty Information" in box with product did not put reasonable person on notice that brochure contained any "freestanding obligation outside the scope of the warranty"); *Campbell v. Gen. Dynamics Govt. Sys. Corp.*, 407 F.3d 546, 556-58 (1st Cir. 2005) (email did not put plaintiff on reasonable notice of arbitration agreement where it did not mention that linked policy contained contractually binding terms and did not request plaintiff's assent); *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) (holding users were not on notice of terms where download button was presented, *no other text regarding terms* could be seen before hitting download button, and user had to scroll down to next screen to see text referring to license agreement); *Sullivan v. All*

7

*Web Leads, Inc.*, 2017 WL 2378079, at *1 (N.D. Ill., 2017) (terms of agreement at issue did not appear unless user scrolled down past the submit button to view terms, and click box only said "submit" which did not imply that user was agreeing to anything like the term "accept" or "agree" would); *Wilson v. Redbox Automated Retail*, LLC, 448 F. Supp. 3d 873, 887 (N.D. Ill. 2020) (where link to terms of use was not found above "pay now" button, customer did not assent to terms); *McKee v. Audible, Inc.*, CV 17–1941–GW, 2017 WL 4685039 (C.D. Cal. July 17, 2017) (same); *Metter v. Uber Technologies, Inc.*, No. 16-cv-06652-RS, 2017 WL 1374579 (N.D. Cal. Apr. 17, 2017) (same).

Plaintiff notably offers no support for his assertion that Respondus should have done something further to "call users' attention to the arbitration and class waiver provisions and…prompt users to examine the text of the terms." (Doc. 27 at 6.) Case law is abundantly clear that whether a person *actually reads* the contract, including the arbitration provision, before clicking the "Accept" button is entirely irrelevant as long as they were given reasonable notice of the existence of the contract. *See, e.g.*, *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome."); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010) ("parties who sign written contracts are presumed to have notice of all of the contract's terms."); *Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at *4-5 (N.D. Ill. Sept. 20, 2018) (enforcing arbitration agreement and holding that "the fact that [the plaintiff] elected not to read the actual terms of service, when he was given an opportunity to do so, has no probative force"); *Emp. Painters' Tr. v. J & B Finishes*, 77 F.3d 1188, 1192 (9th Cir. 1996) ("A party who signs a written agreement is bound by its terms, even though the party neither reads the agreement nor considers the legal consequences of signing it."); *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp.

2d 913, 919 (N.D. Ill. 2003) (the fact that a party does not read the contract is irrelevant, absent fraud). Plaintiff complains that "the only way" for users to know about the arbitration provision in the Student Terms of Use was to scroll through and read the agreement. (Doc. 27 at 7-8.) It should go without saying that of course the only way to know the terms contained in a contract is to actually read the contract. That is precisely why the law does not allow parties to escape the consequences of contracts they have signed by choosing not to read the contract before signing it.

Moreover, even though it was not required to do so, Respondus *did* give Plaintiff explicit notice that the Student Terms of Use had been amended. Plaintiff falsely asserts that "[n]othing in the record indicates in what ways, if any, the new screen differed from the old one to put users on notice that they were potentially agreeing to new terms." (Doc. 27 at 4.) However, the very first line visible in the scroll box below the title "**RESPONDUS MONITOR STUDENT TERMS OF USE**" is "**Last Updated**: May 25, 2021." (Doc. 13 at Ex. 1 ¶ 4 (showing general layout and visual appearance of screen); Doc. 13 at Ex. 1, Ex. D, PageID#103 (terms in effect when Plaintiff used Respondus Monitor on May 25 and 26, 2021).) This put Plaintiff on clear notice that if he had not viewed the Student Terms of Use after the most recent update, he should review them again. If Plaintiff had bothered to read even just the introductory section of the Student Terms of Use, he would have seen the following notice in all capital letters as the final paragraph of the introduction:

> NOTE: THESE TERMS CONTAIN AN ARBITRATION AND CLASS ACTION WAIVER PROVISION IN THE "ARBITRATION" SECTION BELOW THAT AFFECTS YOUR RIGHTS UNDER THESE TERMS AND WITH RESPECT TO ANY DISPUTE BETWEEN YOU AND RESPONDUS OR OUR AFFILIATES. BY USING RESPONDUS MONITOR, YOU ACKNOWLEDGE THAT YOU HAVE READ AND REVIEWED THESE TERMS IN THEIR ENTIRETY, YOU AGREE TO THESE TERMS, AND THESE TERMS CONSTITUTE BINDING AND ENFORCEABLE OBLIGATIONS ON YOU.

(Doc. 13 at Ex.1, Ex. D, PageID# 103.)  Even without this notice to Plaintiff, courts have found that a user assents to the terms of the agreement *each time* the user clicks agree to the terms after the agreement has been presented. *See Lee*, 817 F. App'x at 395 (finding that plaintiff affirmatively indicated his assent to later modified terms in the agreement, where defendant presented him with the agreement and the click button to "sign in" each time).

Plaintiff remaining arguments concerning whether he assented to the Student Terms of Use are all meritless.  He asserts that he "did not have sufficient time to complete a meaningful review of the amended Terms before indicating assent," his university did not "provide[] any alternative means for Plaintiff Veiga to access and take his course exams," and he thought that the "Agree" button "simply allows the user to proceed to take an exam."  (Doc. 27 at 16-18.)  As an initial matter, Plaintiff did not submit a sworn declaration to support any of these assertions, and they consequently must be ignored for the reasons explained above.[4]  *Supra* § 2(A).  Moreover, even if the Court were to consider such assertions, case law makes clear that Plaintiff's subjective state of mind is irrelevant because the appropriate inquiry is whether a reasonable person would have been put on notice of the contract terms (*supra* 5-6)—and the Student Terms of Use easily satisfy this standard for all the reasons discussed above.

## C.     The Scope of the Arbitration Agreement Covers Plaintiff's BIPA Claims.

As Respondus pointed out in its opening brief, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law."  *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).  Plaintiff argues that the arbitration

---

[4] Notably, Plaintiff was already represented by counsel and had filed this case *months before* he agreed to the Student Terms of Use containing the arbitration agreement on May 25, 2021 and again on May 26, 2021.  (*See* Compl.[4] p. 1 (indicating filing date of March 31, 2021).)  Although the unsworn assertions in his brief claim he did not understand what the word "Agree" meant, he alleges he is pursuing a challenging course of study as a Chemistry major at Northwestern University, one of the most prestigious and selective universities in the country.  (Compl. ¶ 8.)

agreement should not be interpreted to have "retroactive effect" to cover BIPA claims that accrued before Plaintiff assented to the Student Terms of Use on May 25 and 26, 2021 because earlier versions of the Student Terms of Use did not contain an arbitration agreement.  (Doc. 27 at 19-20.)  This argument, however, ignores the fact that the language of the Student Terms of Use to which Plaintiff affirmatively agreed on May 25 and May 26, 2021 explicitly specified that "[t]his Arbitration Agreement shall apply, without limitation, to all claims that arose before this or any prior agreement."  (Doc. 13 at Ex. 1, Ex. D, PageID#110.)  The arbitration clause even explicitly notified Plaintiff, in bold and capital letters:

> **NOW OR IN THE FUTURE, THERE MAY BE LAWSUITS AGAINST RESPONDUS ALLEGING CLASS, COLLECTIVE, AND/OR REPRESENTATIVE CLAIMS….IF YOU AGREE TO ARBITRATION WITH RESPONDUS, YOU ARE AGREEING IN ADVANCE THAT YOU WILL NOT PARTICIPATE IN OR SEEK TO RECOVER MONETARY OR OTHER RELIEF UNDER SUCH CLASS, COLLECTIVE, AND/OR REPRESENTATIVE LAWSUITS.**

(Doc. 13 at Ex. 1, Ex. D, PageID#100-11.)  It further specified that "[t]hese Terms constitute the entire agreement between the parties…and supersede any other agreements between Respondus and you regarding Respondus Monitor."  (Doc. 13 at Ex. 1, Ex. D, PageID#110.)

In other words, when Plaintiff agreed to the Student Terms of Use on May 25 and 26 in exchange for being permitted to use Respondus Monitor to complete additional exams, he explicitly and affirmatively agreed that the new version of the terms superseded all prior versions of the terms and that the mutual arbitration agreement covered claims that arose before the new terms were in place.  Thus, there was no "unilateral modification" to any earlier contract between Respondus and Plaintiff, because Plaintiff affirmatively agreed to the new Student Terms of Use and affirmatively agreed that the new version superseded any earlier versions to which he previously had agreed.  *See, e.g.*, *Cargolux Airlines Intern., S.A. v. Sea-Tac Air Cargo L.P. ex rel.*

*Transiplex (Seattle) Inc.*, 2012 WL 2688782, at *4 (Wash. Ct. App. 2012) ("Washington law permits the mutual modification of an existing contract provided there is an objective manifestation of the parties' intent and the modification is supported by new consideration."); *Schwinder v. Austin Bank of Chi.*, 809 N.E.2d 180, 189 (Ill. App. Ct. 2004) ("[P]arties to a contract are ordinarily as free to change it after making it as they were to make it in the first instance….The modified contract is regarded as creating a new single contract…."); *Lee*, 817 F. App'x at 395 (finding that plaintiff affirmatively indicated his assent to later modified terms in the agreement, where defendant presented him with the agreement and the click button to "sign in" each time). Plaintiff's action in affirmatively agreement to the new contractual terms makes the cases he cites entirely inapposite. *See Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 968 (2015) (club could not unilaterally impose retroactive arbitration agreement on member "*who has not expressly consented* to that retroactive application").

Finally, Plaintiff argues that he would not knowingly and voluntarily give up significant substantive rights and give the arbitration and class-waiver provisions retroactive effect. (Doc. 27 at 14-15.) However, he does not explain what "substantive rights" he supposedly gave up. The Supreme Court has made clear that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."[5] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Thus, Plaintiff cannot claim that he gave up any substantive rights under BIPA merely because his BIPA claims must be resolved in arbitration rather than in court. To the

---

[5] The only case Plaintiff cites *is Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995). However, that case merely addressed whether parties to an arbitration agreement had waived the right to seek punitive damages. *See id.* In other words, the "substantive right" at issue was the right to punitive damages. The Court did not suggest that choosing to resolve disputes in an arbitral rather than judicial forum itself waived any substantive rights.

12

extent Plaintiff is implying that he has a substantive right to bring claims on a class, rather than individual basis, the Rules Enabling Act, 28 U.S.C. § 2072(b), "forbids interpreting Rule 23 to abridge, enlarge or modify any substantive right." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011). Instead, Rule 23 "function[s] merely as a procedural vehicle for aggregating and processing claims created by substantive law." *Id.* at 408; see *In re Baldwin–United Corp.*, 770 F.2d 328, 335 (2d Cir.1985) (Fed R. Civ. P. 23(d) "is a rule of procedure and creates no substantive rights or remedies enforceable in federal court.")). Therefore, Plaintiff is not giving up any substantive right to pursue his claims on a putative class basis because Rule 23 is merely a procedural mechanism and does not provide any substantive right to pursue claims as class actions.

Plaintiff does not otherwise dispute that the language of the arbitration agreement covers the BIPA claims that Plaintiff brings in this case. (*See* Doc. 13 at 8.) Plaintiff's claims fall within the scope of the arbitration agreement and consequently must be brought in an arbitral, not judicial, forum.

**D.      The Student Terms of Use Is Not Procedurally or Substantively Unconscionable.**

> *i.      The Student Terms of Use Is Not Procedurally Unconscionable*

Plaintiff argues that the Student Terms of Use is procedurally unconscionable because it was an adhesive contract "offered on a take-it-or-leave-it basis," "Plaintiff Veiga is a natural person and student with no bargaining power," and Plaintiff "is not an attorney." (Doc. 27 at 21; 23.) However, Plaintiff's own cases recognize that "contracts of adhesion are not *per se* unenforceable." *Martinell v. Navistar Intern. Corp.*, No. 11 C 8707, 2012 WL 2503964, at *4 (N.D. Ill. 2012). *See also, e.g.*, *Henderson v. U.S. Patent Commission, Ltd.*, No. 15 C 3897, 2015 WL 6791396 (N.D. Ill. Nov. 2, 2015) ("Illinois law does not void contracts where parties have unequal bargaining power, even if a contract is a so-called take-it-or-leave it deal, absent fraud by the advantaged party."). Indeed, such contracts "are a fact of modern life. Consumers routinely

sign such agreements to obtain credit cards, rental cars, land and cellular telephone service, home furnishings and appliances, loans, and other products and services. It cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable." *Kinkel v. Cingular Wireless, LLC*, 857 N.E.2d 250, 266 (Ill. 2006).[6] "Rather, there must be '[s]ome added coercion or overreaching' beyond these characteristics for a court to find that a contractual provision is procedurally unconscionable." *Zuniga v. Major League Baseball*, No. 1-20-1264, 2021 WL 976958, *5 (Ill. App. Ct. Mar. 16, 2021). *See also Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 882 N.E.2d 157, 175 (Ill. App. Ct. 2008) (same); *Magid Glove & Mfg. Safety Co.*, *LLC v. Tower Int'l, Inc.,* No. 10 C 7377, 2011 WL 1118883, at *3 (N.D. Ill. Mar. 25, 2011) (holding that a clickwrap agreement that included a link to its terms and conditions was not procedurally unconscionable, because "a reasonable user could easily navigate to the Terms and Conditions through only two mouse clicks").

Here, there is no evidence of added coercion or overreaching. Plaintiff argues that he "had no option but to use Respondus Monitor if he wanted to access and take his exams." (Doc. 27 at 21. *See also* Doc. 27 at 8 (asserting that Northwestern did not provide him "any alternative means of accessing or taking his remote online exams").) He asserts that he had "to perform a split-second legal analysis of how [his] rights would be affected without a meaningful opportunity to review the Terms or consult an attorney before beginning [his] exams or tests." (Doc. 27 at 8.) However, Plaintiff provides no *evidence* to support the assertions in his brief that he could not have taken his exams in another manner or was under any time pressure in reviewing the agreement. Did he ask his professor if another method of assessment was available? Did the professor reject his request?

---

[6] *Kinkel*'s holding that the class action waiver in the arbitration agreement was substantively unconscionable is no longer valid in light of the U.S. Supreme Court's subsequent decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

Did he request accommodations from the university? Did the university reject his request? Plaintiff did not submit a declaration addressing any of these issues, and there consequently is no evidence in the record to support the conclusory assertions in his brief. Thus, as explained above, the court cannot consider any of these assertions when ruling on this motion to compel arbitration. *Supra* §2(A).

Even if Plaintiff had submitted evidence on these issues, he still could not demonstrate procedural unconscionability. "Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware that he or she was agreeing to it, *and also* takes into account a lack of bargaining power." *Ironbeam, Inc. v. Evert*, 417 F. Supp. 3d 1031, 1037 (N.D. Ill. 2019) (emphasis added). *See also, e.g.*, *Romney v. Franciscan Med. Grp.*, 186 Wash. App. 728, 740 (2015) (no procedural unconscionability where arbitration clause was understandable and printed in same size font as rest of employment agreement under a bolded heading); *Torgerson v. One Lincoln Tower, LLC*, 166 Wash. 2d 510, 520 (2009), *as corrected* (July 16, 2009) (no procedural unconscionability where "rather than hiding in a maze of fine print, the remedy limitation clause was in the same size font as other key provisions and set off in paragraph 21, which was clearly labeled"). As already explained above, Plaintiff had reasonable notice of the Student Terms of Use. *Supra* §2(B). And if he had bothered to read even just the introductory section, he would have seen the notice in capital letters alerting him to the fact that they contained an individual arbitration agreement. *Supra* 11-12. The Student Terms of Use are not procedurally unconscionable.

> ii.    *The Student Terms of Use Is Not Substantively Unconscionable*

Plaintiff first argues that the arbitration clause is one-sided and substantively unconscionable because it carves out an exception for Respondus to bring IP-related claims in court. This argument, however, is based on Plaintiff's intentional misquoting of this section of the

Student Terms of Use, which actually allows *both* Plaintiff and Respondus to seek relief in court for IP-related claims. (*See* Doc. 13 at Ex. 1, Ex. D, PageID#110 ("**you or Respondus** may seek equitable relief in court for infringement or other misuse of intellectual property rights" (emphasis added).) There is nothing unconscionable about allowing *both* parties to bring certain claims in court. *See, e.g.*, *Walters v. A.A.A. Waterproofing, Inc.*, 120 Wash. App. 354, 361 (2004), *review granted, cause remanded*, 153 Wash. 2d 1023, 108 P.3d 1227 (2005) (finding no disparity where "Although the arbitration agreement reserves the right to take to court disputes that are more likely to be raised by A.A.A., either party may litigate those disputes."); *Romney,* 186 Wash. App. at 742 ("substantive unconscionability does not concern whether the parties have mirror obligations under the agreement, but rather whether the effect of the provision is so 'one-sided' as to render it patently overly harsh"). The single non-binding, out-of-Circuit (and pre-*AT&T Mobility*) decision that Plaintiff cites is entirely inapposite because it involved an arbitration agreement where only an *employee's* claims were required to be brought in arbitration while the *employer's* claims could be brought in court. *See Ingle v. Circuit City Stores, Inc*., 328 F.3d 1165, 1173-74 (9th Cir. 2003).

Plaintiff remaining arguments essentially assert that the Student Terms of Use are substantively unconscionable because they contain an arbitration agreement with a class action waiver. (Doc. 27 at 23-24.) However, the U.S. Supreme Court rejected this argument more than a decade ago in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2011) (holding state law unconscionability doctrine violated Federal Arbitration Act where state law doctrine invalidated class waivers in arbitration agreements which were included in contracts of adhesion where statutory damages were small and consumer alleged scheme to cheat consumers). As explained above, the Supreme Court likewise has rejected Plaintiff's argument that agreeing to

arbitrate claims on an individual basis impairs any substantive rights or otherwise impairs the ability to seek redress for statutory violations. *Supra* 14-15.

In short, Plaintiff's substantive unconscionability arguments are all based on her misrepresentations of the actual terms of the agreement or her complete disregard for controlling Supreme Court law. The Student Terms of Use are not substantively unconscionable.

### III.   CONCLUSION

For the reasons above and in Respondus' opening brief, Respondus respectfully requests that this Court enter an Order compelling Plaintiff Veiga to arbitrate his claims against Respondus on an individualized basis within this judicial district or other mutually agreeable location, and to stay these proceedings pending completion of arbitration.

Dated: August 23, 2021                                RESPONDUS, INC.

By: /s/ Bonnie Keane DelGobbo

Bonnie Keane DelGobbo
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606-2841
Telephone: (312) 416-6200
bdelgobbo@bakerlaw.com

Joel Griswold
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4088
jcgriswold@bakerlaw.com

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on August 23, 2021, she caused a true copy of the foregoing document to be filed and served via the Court's CM/ECF system, which will send notice of the filing to all counsel of record. Parties may access the filing through the Court's CM/ECF system.

/s/ Bonnie Keane DelGobbo