UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCIUS VEIGA, MICHAEL STERCHELE, and ALEX PARKER ZIMMERMAN, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RESPONDUS, INC.,<br><br>　　　　Defendant. | Case No. 1:21-cv-02620 |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT
OF ITS RULE 12(B)(6) MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

ARGUMENT ...........................................................................................................................1

    A.    Plaintiff Cannot Pursue Claims Under BIPA, An Illinois Law, Because Washington Law Applies. ...........................................................................................1

        1.    The Terms of Use is a binding contract. .........................................................1

        2.    The Washington choice-of-law provision is enforceable. ............................2

    B.    Plaintiffs Have Alleged That Respondus Complied With BIPA ..............................7

        1.    The court can and should consider the documents Plaintiffs incorporated by reference in the Complaint..................................................7

        2.    Plaintiffs have alleged that Respondus complied with Section 15(a). .........8

        3.    Plaintiffs have alleged that Respondus complied with Section 15(b). ..........9

    C.    BIPA Does Not Apply to Respondus' Use of Photographs.......................................9

    D.    The Dismissal Should Be With Prejudice................................................................10

CONCLUSION........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brooks v. Midas-International Corp.*,
   361 N.E.2d 815 (Ill. App. Ct. 1977) ...................................................................................5

*Brown & Brown, Inc. v. Mudron*,
   887 N.E.2d 437 (Ill. App. Ct. 2008) ................................................................................5, 6

*Brownmark Films, LLC v. Comedy Partners*,
   682 F.3d 687 (7th Cir. 2012) ...............................................................................................2

*City of Evanstan v. Evanstan Fire Fighters Ass'n, et al.*,
   545 N.E.2d 252 (Ill. App. Ct. 1989) ...................................................................................5

*In re Facebook Biometric Privacy Litigation*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..............................................................................5

*Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*,
   947 F. Supp. 2d 922 (N.D. Ind. 2013) ................................................................................1

*Gociman v. Loyola Univ. of Chi.*,
   No. 20 C 3116, 2021 WL 243573 .....................................................................................10

*Gonzalez-Koeneke v. West*,
   791 F.3d 801 (7th Cir. 2015) .............................................................................................10

*Levenstein v. Salafsky*,
   164 F.3d 345 (7th Cir. 1998) ...............................................................................................7

*M. Block & Sons, Inc. v. IBM Corp.*,
   No. 04 C 340, 2004 WL 1557631 (N.D. Ill. July 8, 2004) .................................................4

*Maher & Assoc., Inc. v. Quality Cabinets*,
   640 N.E.2d 1000 (Ill. App. Ct. 1994) .................................................................................5

*Midway Home Entertainment, Inc. v. Atwood Richards, Inc.*,
   No. 98 C 2128, 1998 WL 774123 (N.D. Ill. Oct. 29, 1998) ...........................................3, 4

*Morris B. Chapman & Assocs. v. Kitzman*,
   739 N.E.2d 1263 (Ill. 2000) ................................................................................................3

*Pennington v. Travelex Currency Servs., Inc.*,
   114 F. Supp. 3d 697 (N.D. Ill. 2015) ..................................................................................1

*Potomac Leasing Co. v. Chuck's Pub, Inc.*,
   156 Ill. App. 3d 755 (2d Dist. 1987) ............................................................................ 3, 4, 6

*Prof'l Sol. Ins. Co. v. Giolas*,
   297 F. Supp. 3d 805 (N.D. Ill. 2017) ................................................................................ 2, 9

*Sonrai Systems, LLC v. AMCS Group Inc.*,
   No. 16 C 9404, 2017 WL 4281122 (N.D. Ill. Sept. 27, 2017) ............................................. 1

*Telular Corp. v. Mentor Graphics Corp.*,
   282 F. Supp. 2d 869 (N.D. Ill. 2003) ................................................................................... 4

*Ulmer v. Avila*,
   No. 15 CV 3659, 2016 WL 3671449 (N.D. Ill. July 11, 2016) ........................................ 3, 9

*Village of McCook v. Illinois Bell Telephone Co.*,
   780 N.E.2d 335 (Ill. App. Ct. 2002) .................................................................................... 4

*Warwick v. Schneider National, Inc.*,
   No. 20-C-1556, 2021 WL 1851272 (E.D. Wisc. May 10, 2021) ......................................... 6

*Wheeler v. Caterpillar Tractor Co.*,
   485 N.E.2d 372 (Ill. 1985) ................................................................................................... 5

*WTM, Inc. v. Henneck*,
   125 F. Supp. 2d 864 (N.D. Ill. 2000) ................................................................................... 4

**Statutes**

740 ILCS 14/10 ............................................................................................................................. 9

740 ILCS 14/15(a) ........................................................................................................................ 8

740 ILCS 14/15(b)(2) ................................................................................................................... 9

820 ILCS 120/2 ............................................................................................................................. 6

Wash. Rev. Code Ann. § 19.375.030 ............................................................................................ 4

# ARGUMENT

**A. Plaintiff Cannot Pursue Claims Under BIPA, An Illinois Law, Because Washington Law Applies.**

The Terms of Use for Respondus Monitor is a valid contract between Plaintiffs and Respondus and thus the Washington choice-of-law provision is enforceable. The Washington choice-of-law provision does not violate an Illinois fundamental public policy and Illinois does not have a materially greater interest in this litigation. As such, Washington law applies to Plaintiffs' claims and BIPA does not apply.

1. <u>The Terms of Use is a binding contract.</u>

Plaintiffs first argue that "Respondus has not…made *any* showing that a binding contract was formed." (Doc. 26 at 4.) This ignores that Plaintiffs themselves referenced and quoted from the Terms of Use in their Complaint, and cited to the website where the full Terms of Use were available.[1] (Compl. ¶ 23.)

At the motion to dismiss stage, "the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Sonrai Systems, LLC v. AMCS Group Inc.*, No. 16 C 9404, 2017 WL 4281122, *8 n.3 (N.D. Ill. Sept. 27, 2017). This doctrine also applies to websites relied upon by plaintiffs in their complaints. *Id.* (finding defendant's website to be incorporated by reference at the motion to dismiss stage since plaintiff relies upon the site in its complaint); *Pennington v. Travelex Currency Servs., Inc.*, 114 F. Supp. 3d 697, 703 n.7 (N.D. Ill. 2015) (in consumer fraud case, permitting defendant to refer to warning on website since plaintiff's allegations refer to the entire website and "information on web pages that [plaintiff] chose not to highlight are fair game"); *Fortres Grand Corp. v. Warner*

---

[1] The Complaint is attached as Exhibit 1 to the Notice of Removal. (Doc. 1 at PageID#9-28.)

*Bros. Entertainment Inc.*, 947 F. Supp. 2d 922, 925 (N.D. Ind. 2013) (considering websites which were "clearly 'central to the complaint and are referred to in it'"). Although Plaintiffs ask the Court to ignore the Terms of Use instead accept their allegations "that they were never presented with any written disclosures, explanations, retention schedules or consent forms" (Doc. 26 at 5), the purpose of the incorporation-by-reference doctrine is to "prevent[] a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (internal quotation and alteration marks omitted).

Because Plaintiffs' Complaint explicitly relies on the Terms of Use, references and quotes portions of the Terms of Use, and cites to the website where the Terms of Use are available, the Court can and should consider the full Terms of Use in deciding Defendant's Motion to Dismiss. Those Terms of Use explicitly state, in the very first paragraph, that "By using Respondus Monitor you agree to these Terms in full . . . ." (Doc. 16 Exh. A.) In other words, assent to the Terms of Use is a clear condition of the use of Respondus Monitor. As such, Plaintiffs assented to the Terms of Use each time Plaintiffs utilized Respondus Monitor to take an exam. The Terms of Use consequently are a binding contract between Plaintiffs and Respondus.

2. <u>The Washington choice-of-law provision is enforceable.</u>

a. *Plaintiff misstates the appropriate legal framework.*

As an initial matter, Plaintiff did not address Respondus' argument that because the choice-of-law provision at issue specifies it applies "without regard to conflicts of law principles," this Court need not engage in a choice-of-law analysis before determining that Washington law applies. (Doc. 49 at 5-6.) Plaintiff has consequently waived that issue, and the Court can apply Washington law without any further analysis. *See, e.g.*, *Prof'l Sol. Ins. Co. v. Giolas*, 297 F. Supp. 3d 805, 816

(N.D. Ill. 2017) (party waives opposition to argument by failing to address it); *Ulmer v. Avila*, No. 15 CV 3659, 2016 WL 3671449, at *12 (N.D. Ill. July 11, 2016) (same).

Even if the Court does believe a choice-of-law analysis is necessary, Plaintiffs misstate the applicable standard for deciding whether to enforce a choice-of-law provision, incorrectly relying on *Morris B. Chapman & Assocs. v. Kitzman* and the Restatement (Second) of Conflict of Laws for the "most significant relationship" test. (Doc. 26 at 6.) That test, however, applies only in a general choice-of-law analysis, *not* when an express choice-of-law provision is at issue. *See Morris B. Chapman & Assocs. v. Kitzman*, 739 N.E.2d 1263, 1269 (Ill. 2000) (no choice of law contract provision at issue in deciding whether to apply Missouri or Illinois law to a wrongful death action).

When deciding whether to enforce an express choice-of-law provision in a contract, courts will give effect to the parties' choice "unless it would *both* violate fundamental public policy *and* Illinois has a materially greater interest in the litigation." *Midway Home Entertainment, Inc. v. Atwood Richards, Inc.*, No. 98 C 2128, 1998 WL 774123, at *2 (N.D. Ill. Oct. 29, 1998) (emphasis added). To render such a provision unenforceable, "the public policy considerations must be of strong and of a fundamental nature to justify overriding the chosen law of the parties" and "a court should not refuse to apply the law of a foreign state, however unlike its own, unless it is contrary to pure morals and abstract justice, or unless enforcement would be of evil example and harmful to its people." *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 759 (2d Dist. 1987).

> b. *Enforcing the Washington choice-of-law provision would not violate fundamental public policy.*

Plaintiffs argue that enforcing the Washington choice-of-law provision is contrary to Illinois' public policy simply because Washington's own biometric privacy legislation does not

3

provide a private right of action and "relief is completely absent." (Doc. 26 at 8.) This ignores that Washington's biometric privacy statute is enforceable by the Washington attorney general. Wash. Rev. Code Ann. § 19.375.030. Illinois courts repeatedly have made clear that the mere fact that plaintiffs are denied a certain type of remedy under foreign law (here, a private right of action) is not enough to invalidate a choice-of-law provision. *See e.g.*, *M. Block & Sons, Inc. v. IBM Corp.*, No. 04 C 340, 2004 WL 1557631, at *7 (N.D. Ill. July 8, 2004) (dismissing Illinois Consumer Fraud and Deceptive Practices Act claim finding no public policy concerns with enforcing New York choice of law provision); *Telular Corp. v. Mentor Graphics Corp.*, 282 F. Supp. 2d 869, 871 (N.D. Ill. 2003) (dismissing Illinois Consumer Fraud Act claim due to Oregon choice of law provision); *WTM, Inc. v. Henneck*, 125 F. Supp. 2d 864, 868 (N.D. Ill. 2000) ("[t]he fact that a different state may provide certain statutory rights for a plaintiff which are not available under the chosen state's law does not invalidate a choice-of-law provision as contrary to public policy"); *Midway Home Entertainment, Inc. v. Atwood Richards, Inc*., No. 98 C 2128, 1998 WL 774123, at *2 (N.D. Ill. Oct. 29, 1998) (granting motion to dismiss because choice-of-law provisions requiring application of New York law barred the Illinois Consumer Fraud Act claim); *Potomac Leasing Co. v. Chucks Pub, Inc.*, 156 Ill. App. 3d 755, 759 (1987) (enforcing Michigan choice of law provision despite leaving defendant with no defense under Michigan law).

Furthermore, there are countless laws in Illinois and throughout the country that are enforceable only by government entities and not through private rights of action. Illinois courts routinely deny plaintiffs' attempts to graft private rights of action onto statutes that do not provide one, demonstrating that Illinois does not recognize any fundamental right to a private cause of action. *See e.g. Village of McCook v. Illinois Bell Telephone Co.*, 780 N.E.2d 335, 342 (Ill. App. Ct. 2002) (holding plaintiff lacked standing to bring action for enforcement or violation of Illinois

4

Emergency Telephone System Act and claims were impermissible as the Act only empowers the Attorney General to bring such an action and provides no private right of action); *City of Evanstan v. Evanstan Fire Fighters Ass'n, et al.*, 545 N.E.2d 252, 259 (Ill. App. Ct. 1989) (enforcement of Solicitation Act was within the exclusive province of state Attorney General); *Brooks v. Midas-International Corp.*, 361 N.E.2d 815, 823 (Ill. App. Ct. 1977) (dismissing portions of complaint seeking injunctive relief since Consumer Fraud and Deceptive Business Practice Act grants such power only to the Attorney General and does not provide a private right of action for such relief).

Significantly, Plaintiffs did not even attempt to address *any* of the Illinois cases Respondus cited in its opening brief which enforced choice-of-law provisions even where the foreign state's law precluded the plaintiff from pursuing Illinois-specific claims or defenses. (*See* Doc. 16 at 7-8.) Instead, Plaintiffs point to *In re Facebook Biometric Privacy Litigation*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) in asking this Court to find that applying the Washington choice-of-law clause would violate fundamental public policy in Illinois. (Doc. 26 at 8-9.) As Respondus already pointed out in its opening brief, that case is non-binding, wrongly decided, and distinguishable in any event because California choice-of-law rules differ from Illinois choice-of-law rules and because California (unlike Washington) has no law comparable to BIPA. (*See* Doc. 16 at 8-9 (discussing *In re Facebook*).)

The remaining cases Plaintiff cites in arguing that applying Washington law would violate Illinois public policy are easily distinguishable. *Wheeler* is wholly inapposite and did not even involve a choice-of-law issue. *See Wheeler v. Caterpillar Tractor Co.*, 485 N.E.2d 372, 377 (Ill. 1985) (analyzing whether plaintiff had sufficiently alleged retaliatory discharge in violation of public policy). *Maher* and *Brown & Brown*, both of which are non-binding, involved situations where Illinois law directly conflicted with the law specified in a choice-of-law clause. *See Maher*

5

*& Assoc., Inc. v. Quality Cabinets*, 640 N.E.2d 1000, 1005 (Ill. App. Ct. 1994) (rejecting application of Texas law to Illinois-based sales representative's claims where Illinois statute provided that "'Any provision in a contract between a sales representative and principal purporting to waive any of the provisions of this Act shall be void.'" (quoting 820 ILCS 120/2)); *Brown & Brown, Inc. v. Mudron*, 887 N.E.2d 437, 440 (Ill. App. Ct. 2008) (refusing to apply Florida choice-of-law provision when assessing the validity of restrictive covenant because Illinois law *requires* courts to "consider the hardship the covenant imposes upon the individual employee," while Florida law "specifically prohibits considering the hardship a restrictive covenant imposes upon an individual employee").

Here, Washington law does not contradict Illinois law or public policy. Instead, Washington, like Illinois, is among only three states with biometric privacy laws. The mere fact that the Illinois and Washington statutes are not identical is not enough to demonstrate the choice-of-law provision frustrates public policy. *See Warwick v. Schneider National, Inc.*, No. 20-C-1556, 2021 WL 1851272, at *3 (E.D. Wisc. May 10, 2021) (enforcing Wisconsin choice of law provision and finding that the absence of a Wisconsin statute identical to the one in Illinois "is not enough on its own to prove that the choice-of-law provisions frustrate public policy"). Applying the comparable, even if not identical, Washington law, is not "contrary to pure moral and abstract justice" or "evil," as Illinois choice-of-law rules would require to justify overriding the express choice-of-law provision. *See Potomac Leasing*, 156 Ill. App. 3d at 759.

  c. *Illinois does not have a materially greater interest than Washington in the litigation.*

Illinois does not have a materially greater interest in this litigation than Washington. Plaintiff asserts that "Respondus' conduct took place within the State of Illinois" and "Plaintiffs and putative class members have no connection whatsoever to Washington." (Doc. 26 at 10.)

6

Plaintiff notably offers no support for those assertions, which consequently must be ignored. Regardless, even assuming *arguendo* that Illinois has some interest given Plaintiffs' residency in Illinois, that interest is not "materially greater" than Washington's own countervailing interests given Respondus is a Washington corporation, maintains its principal place of business in Washington, and the contract was executed online. (*See* Doc. 16 at 9-10.)

      **B.**      **Plaintiffs Have Alleged That Respondus Complied With BIPA**

            1.      <u>The court can and should consider the documents Plaintiffs incorporated by reference in the Complaint.</u>

Plaintiffs ask the Court not to consider the Terms of Use, Privacy Policy, Privacy Center, and Additional Privacy Information pages because they did not attach them to the Complaint. (Doc. 26 at 11.) However, Plaintiff does not dispute the authenticity of any of these pages that Respondus submitted with its motion to dismiss. (*See generally* Doc. 26 at 4-6, 11-12.) Moreover, because Plaintiffs' claims concern the content of written policies, notices, and consents, this case is easily distinguishable from the one Plaintiffs cite in their brief. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (declining to consider unspecified documents in dispute over qualified immunity). As already explained above, the Terms of Use are incorporated by reference in the Complaint and consequently can and should be considered on this motion to dismiss. *Supra* §A(1). The exact same analysis applies to the Privacy Center and Additional Privacy Information pages, which Plaintiffs likewise explicitly reference in the Complaint. (*See* Compl. ¶¶ 21-22, 30 & n.5-7, 14.) Furthermore, as Respondus explained in its opening brief, the Terms of Use explicitly incorporates by reference the Privacy Policy, so the Privacy Policy is appropriately considered as well. (*See* Doc. 16 at 10-11 (discussing incorporation by reference.)

      2.      <u>Plaintiffs have alleged that Respondus complied with Section 15(a).</u>

Plaintiffs argue that the written disclosures do not comply with Section 15(a) because the disclosures indicate that some data may be retained for longer than three years and "[t]here is no legitimate purpose for retaining a user's biometric data for a year after an exam, let along five years." (Doc. 26 at 12-13.) However, BIPA requires destruction "*when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or* within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a) (emphasis added). The Additional Privacy Information page explains that "[t]he legal ground for storing a user's exam session data on our servers is performance of a contract." (Doc. 16 at PageID #163.) Thus, Respondus' written policy satisfies Section 15(a)'s requirement that data will be destroyed "when the initial purpose for collecting or obtaining [it]…has been satisfied"—namely, when the data is no longer needed pursuant to a contract.

Plaintiffs also argue that Respondus' destruction policies do not comply with Section 15(a) because the Terms of Use note that "'Respondus does not guarantee removal of all traces of any information or data….'" (Doc. 26 at 13 (quoting Terms of Use).) However, Plaintiffs offer no support for the assertion that BIPA requires destruction of "all traces of any information or data." Section 15(a) refers to destruction of "biometric identifiers and biometric information," not to "all traces of any information or data." *See* 740 ILCS 14/15(a). Nothing in Respondus' disclosures indicate that "biometric identifiers" or "biometric information" will be retained indefinitely.[2]

---

[2] As Respondus noted in its opening brief, Respondus disputes that the Respondus Monitor technology ever involves "biometric identifiers" or "biometric information" as defined by BIPA. Respondus uses those terms in this briefing only because Plaintiffs' allegations are accepted as true at the motion to dismiss stage, subject to certain exceptions such as the incorporation-by-reference doctrine.

3. <u>Plaintiffs have alleged that Respondus complied with Section 15(b).</u>

Plaintiffs do not address *any* of the arguments or *any* of the disclosures that Respondus highlighted in its opening brief with respect to Section 15(b). Instead, Plaintiffs simply state that their "allegations clearly state a claim for violation of section 15(b)." (Doc. 26 at 13.) Respondus' opening brief quoted the portions of the Terms of Use and Additional Privacy Information that address each and every element of Plaintiffs' Section 15(b) claim. [3] (Doc. 16 at 12-15.) By failing to address this language or offer any explanation for why these extensive disclosures do not satisfy Section 15(b), Plaintiffs have effectively conceded that Respondus has complied with Section 15(b). *See, e.g.*, *Prof'l Sol.*, 297 F. Supp. 3d at 816 (party waives opposition to argument by failing to address it); *Ulmer*, 2016 WL 3671449, at *12 (same).

C. **BIPA Does Not Apply to Respondus' Use of Photographs**

Neither Plaintiffs nor the cases Plaintiffs cite closely analyze the fact that BIPA covers two separate categories of information: (1) original sources of information about a person ("biometric identifiers") and (2) data derived from those original sources ("biometric information"). 740 ILCS 14/10. BIPA expressly provides that "[b]iometric identifiers do not include…photographs." *Id.* BIPA also expressly provides that "[b]iometric information does not include information *derived from items* or procedures excluded under the definition of biometric identifiers." *Id.* (emphasis added). The only reasonable interpretation of the BIPA's plain language is that because "biometric identifiers…do not include photographs," any information "derived from" photographs does not

---

[3] Section 15(b) only requires that consumers receive notice of the "length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(b)(2). To the extent Plaintiffs argue that Section *15(a)* requires *publicly available* policies to identify a destruction period no greater than three years (Doc. 26 at 12-13), Section *15(b)* does not have any corresponding language with respect to the notice provided *directly to consumers* before collections. Even Plaintiffs concedes that both the Terms of Use and the Additional Privacy Information specify data retention periods. (Doc. 26 at 12-13.)

9

constitute "biometric information." Plaintiffs do not contest that video recordings are equivalent to photographs under BIPA. (*See generally* Doc. 26 at 14-15.) Thus, because Plaintiffs' BIPA claims are based on video recordings and facial information derived from those video recordings—both of which are expressly excluded from BIPA's coverage—they have failed to state a claim for violation of any of BIPA's provisions.

### D. The Dismissal Should Be With Prejudice

Plaintiffs assert in a footnote that "dismissal with prejudice is inappropriate here, given the nascent stage of this litigation." (Doc. 26 at 15 n.3.) However, they do not even attempt to explain how they could amend the Complaint to cure any of the deficiencies above. Each basis that Respondus has presented for dismissal is a purely legal issue that cannot be cured through amendment. As such, Plaintiffs' Complaint must be dismissed with prejudice. *See, e.g.*, *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) (dismissal with prejudice appropriate "when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint"); *Gociman v. Loyola Univ. of Chi.*, No. 20 C 3116, 2021 WL 243573, at *5 n.4 (dismissing complaint with prejudice where dismissal was "based on issues of law and the interpretation of the alleged contract between plaintiffs and defendants" because "pleading additional facts would not save plaintiffs' claim from dismissal").

## CONCLUSION

Plaintiffs' Complaint fails to state a claim for three independent reasons, any of which is alone sufficient to require dismissal with prejudice. First, Washington law applies to Plaintiffs' dispute concerning their use of Respondus Monitor, and they consequently cannot bring claims under BIPA, an Illinois law. Second, even if BIPA did apply, the documents that Plaintiffs incorporate by reference in their Complaint demonstrate that Respondus complied with BIPA. Third, BIPA specifies that it does not apply to the information that forms the basis of Plaintiffs'

10

BIPA claims—photographs and information derived from photographs. Because none of these defects could be cured through amendment, the dismissal must be with prejudice.

| | |
|---|---|
| Dated: August 23, 2021 | RESPONDUS, INC. |
| | By: /s/ Bonnie Keane DelGobbo |

Bonnie Keane DelGobbo (bdelgobbo@bakerlaw.com)
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606-2841
Telephone: (312) 416-6200

Joel Griswold (jcgriswold@bakerlaw.com)
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4088

*Counsel for Defendant*

11

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that she filed and served the foregoing document via the Court's CM/ECF system, which will send notice of the filing to all counsel of record. Parties may access the filing through the Court's CM/ECF system.

/s/ Bonnie Keane DelGobbo